692 A.2d 103

THOMAS J. BIONDI, PLAINTIFF–APPELLANT, v. ANTOINE NASSIMOS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, DEFENDANT–RESPONDENT, AND

THE NEW JERSEY SOCIETY OF PROFESSIONAL ENERGY AND ENVIRONMENTAL CONTRACTORS, DEFENDANT–THIRD–PARTY PLAINTIFF–RESPONDENT, v. DEPARTMENT OF CONSUMER AFFAIRS OF THE STATE OF NEW JERSEY, AN ADMINISTRATIVE AGENCY OF THE STATE OF NEW JERSEY, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued March 12, 1997—Decided April 28, 1997.

Before Judges LONG, SKILLMAN and CUFF.

*Frank P. Arleo* argued the cause for appellant (*Arseneault & Krovatin,* attorneys; *Mr. Arleo,* on the brief).

*Karim G. Kaspar* argued the cause for respondents (*Lowenstein, Sandler, Kohl, Fisher & Boylan,* attorneys; *Mr. Kaspar,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This appeal involves the "slander *per se* " doctrine. At the time of the alleged slander, plaintiff Thomas J. Biondi was Chairman of the New Jersey Board of Examiners of Master Plumbers (the

Board). Defendant Antoine Nassimos regularly attended the Board's public meetings, apparently acting as a liaison between the New Jersey Society of Professional Energy and Environmental Contractors (NJSPEEC) and the Board. On September 23, 1993, Nassimos attended a public meeting at which the Board announced a decision that Joseph Fichner, Jr., a licensed master plumber and member of the NJSPEEC, had committed various acts of occupational misconduct, fraud and misrepresentation. See *In re Fichner*, 144 *N.J.* 459, 462–65, 677 *A.2d* 201 (1996). Based on these violations, the Board ordered Fichner to pay substantial fines and to make restitution to various customers, and also imposed "an inactive five year suspension" of his license. Later in the meeting when the public was given the opportunity to speak, Nassimos charged the Board with improperly releasing information about its decision in the *Fichner* matter prior to taking official action. Nassimos also charged that it was improper for plaintiff, as a member of the Board, to be affiliated with the New Jersey Association of Plumbing, Heating & Cooling Contractors. According to plaintiff, Nassimos then said "words to the effect of: 'I have information that the Chairman, Mr. Biondi, has mob connections and that if I don't stop complaining against him and the Board, he will order a hit on me.'" In response, plaintiff said to Nassimos: "I think you've overstepped your bounds. I might have to consult an attorney."

On November 3, 1993, plaintiff filed this action against Nassimos and the NJSPEEC. Plaintiff's complaint alleged that Nassimos' statement that plaintiff "has mob connections" and would "order a hit" on him was "intended by Mr. Nassimos and were understood by the listeners to indicate and designate someone as a member of organized crime, as the perpetrator of uncounted serious crimes, as one who makes his living through a life of crime, as one who directs others to commit crimes, . . . and as one who is involved in crimes including, but not limited to murder, extortion, gambling and bribery of public officials."

After the trial court denied defendants' motion for summary judgment, a trial was commenced before a jury. However, the trial court declared a mistrial shortly before the close of plaintiff's case. Prior to the second trial, defendants renewed their motion for summary judgment. At oral argument on the motion, plaintiff's counsel conceded that he did not have any "special damages" and was "stuck with a slander per se case." This time the court granted defendants' motion, concluding that a statement that a person has "connections with [the] mafia" does not constitute an allegation of criminal activity and therefore does not constitute slander *per se*. Plaintiff appeals from the summary judgment dismissing his complaint.[1] We affirm.

At the outset, we note that the issue presented in this appeal is not whether Nassimos' statements that plaintiff has "mob connections" and may "order a hit" upon him are defamatory but rather whether they constitute "slander *per se*." We have no doubt that a jury could find these statements to be defamatory, that is, as "tend[ing] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Ward v. Zelikovsky*, 136 *N.J.* 516, 529, 643 *A.*2d 972 (1994) (quoting *Restatement (Second) of Torts* § 559 (1977)); *see Bufalino v. Associated Press*, 692 *F.*2d 266, 269 (2nd Cir.1982), *cert. denied*, 462 *U.S.* 1111, 103 *S.Ct.* 2463, 77 *L. Ed.*2d 1340 (1983); *Clemente v. Espinosa*, 749 *F.Supp.* 672, 677 (E.D.Pa.1990); *Privitera v. Town of Phelps*, 79 *A.D.*2d 1, 435 *N.Y.S.*2d 402, 405–06, *appeal dismissed*, 53 *N.Y.*2d 796 (1981). In fact, it is possible that such statements could be found to be defamatory *per se*, that is, to so clearly denigrate a person's reputation that a court could decide that the statements are defamatory without submitting the issue to the jury. *See*

---

[1] The NJSPEEC filed a cross claim for indemnification against Nassimos, a counterclaim against plaintiff, and a third party complaint against the Board, improperly designated as the "Department of Consumer Affairs." However, these claims have all been dismissed, so the summary judgment in favor of defendants constitutes a final judgment which is appealable as of right.

*Lawrence v. Bauer Publ'g & Printing Ltd.*, 89 *N.J.* 451, 458–60, 446 *A.*2d 469, *cert. denied*, 459 *U.S.* 999, 103 *S.Ct.* 358, 74 *L.Ed.*2d 395 (1982).[2]

However, plaintiff cannot prevail merely by showing that Nassimos' statements were defamatory because he has not offered any evidence of the type of damages generally required to establish a cause of action for slander. To establish a slander claim under the common law, a plaintiff is required to show "special damages," which is defined as "harm of a material or pecuniary nature." *Ward v. Zelikovsky, supra*, 136 *N.J.* at 540, 643 *A.*2d 972. Plaintiff admittedly has no evidence that he suffered such "special damages" as a result of Nassimos' statements. Moreover, even if our Supreme Court were prepared to modify the common law rule requiring special damages to establish a cause of action for slander by allowing a plaintiff in a slander action, as in most libel actions, see *Sisler v. Gannett Co., Inc.*, 104 *N.J.* 256, 281, 516 *A.*2d 1083 (1986), to prove any form of actual damage to reputation, either pecuniary or non-pecuniary, see David A. Anderson, *Reputation, Compensation and Proof,* 25 *Wm. & Mary L.Rev.* 747, 749 (1984); Rodney A. Smolla, *Law of Defamation* § 7.08 (1986), plaintiff presented no evidence that he suffered any damage to his reputation as a result of Nassimos' outburst at the Board meeting. Plaintiff testified at his deposition that when he attended a meeting of the New Jersey Association of Plumbing, Heating and Cooling Contractors, other members referred to him

---

[2] We note that confusion is sometimes caused by the fact that the term "per se" is used in connection with two quite distinct concepts in the law of defamation. The term "defamation per se" refers to a statement whose defamatory meaning is so clear on its face that the court is not required to submit the issue to the jury. *Lawrence v. Bauer Publ'g & Printing, Ltd., supra,* 89 *N.J.* at 459, 446 *A.*2d 469. On the other hand, "slander per se," the doctrine involved in this appeal, refers to four categories of slander which are considered so clearly damaging to reputation that a plaintiff may establish a cause of action without presenting any evidence of actual damage to reputation. *Ward v. Zelikovsky, supra,* 136 *N.J.* at 540, 643 *A.*2d 972; *see generally,* Rodney A. Smolla, *Law of Defamation* §§ 7.04, 7.06[2] (1986).

as "Don Thomasso" and "Godfather," asked whether they had to "kiss [his] ring," and insisted that he sit at the head of the table. However, plaintiff did not show the kind of damage to reputation ordinarily required to establish a cause of action for defamation, because he did not present evidence that anyone had refused to associate with him or that any of his business or personal relationships had been "seriously disrupted." *Sisler v. Gannett Co., Inc., supra*, 104 *N.J.* at 281, 516 *A.*2d 1083; *see also Ward v. Zelikovsky, supra*, 136 *N.J.* at 542, 643 *A.*2d 972. Therefore, his claim is maintainable only if Nassimos' statements constituted slander *per se*.

The slander *per se* doctrine is limited to defamatory statements which impute to another person (1) a criminal offense; (2) a loathsome disease; (3) conduct, characteristics or a condition that is incompatible with his business, trade or office; or (4) serious sexual misconduct. *Restatement (Second) of Torts* §§ 570–574 (1977); *see Gnapinsky v. Goldyn*, 23 *N.J.* 243, 250, 128 *A.*2d 697 (1957). If a defamatory statement constitutes slander *per se*, a plaintiff may establish a cause of action not only without proving "special damages," that is, damages of a pecuniary nature, but without proving any form of actual damage to reputation. *Ward v. Zelikovsky, supra*, 136 *N.J.* at 540–41, 643 *A.*2d 972. This is sometimes referred to as the "presumed damages" doctrine. *Sisler v. Gannett Co., Inc., supra*, 104 *N.J.* at 281, 516 *A.*2d 1083.

The slander *per se* doctrine has been severely criticized by scholarly commentators, who recommend the elimination of both the "presumed damages" rule applicable to slander *per se* cases and the "special damages" rule applicable to all other slander cases. Anderson, *supra*, 25 *Wm. & Mary L.Rev.* at 749, 774–78; Smolla, *supra*, § 7.08. The commentators conclude that these archaic common law rules should be replaced by a single uniform rule that a plaintiff must prove actual damage to reputation, either pecuniary or non-pecuniary, to establish any cause of action for defamation. One commentator states:

> [The] legitimate purpose [of defamation law is] compensating individuals for injury to reputation. Requiring proof of harm would reduce defamation to this purpose. The actual injury rule would bring defamation into line with the rest of tort law, which does not purport to punish wrongdoing or regulate activity in the absence of injury.
>
> [Anderson, *supra*, 25 *Wm. & Mary L.Rev.* at 774.]

*See also* 2 Fowler V. Harper et al., *The Law of Torts* § 5.14 at 116 (2d ed.1986); *Prosser on Torts, supra,* § 112 at 797 (5th ed.1984).

Our Supreme Court has taken note of these scholarly criticisms of the slander *per se* doctrine but deferred consideration of its elimination to "another time":

> Commentators discourage the continued existence of slander *per se* categories and specifically disagree with the rule that parties need prove no special damages for those types of slander. Requiring proof of special damages requires a plaintiff to demonstrate harm to reputation from an alleged defamatory statement. The trend of modern tort law is to focus on the injury not the wrong and the slander *per se* categories are a relic from tort law's previous age. Because the goal of defamation law should be to "compensat[e] individuals for harm to reputation," the trend should be toward elimination not expansion of the *per se* categories.
>
> We leave for another time whether we should eliminate slander *per se*. Today we decide only that we will not expand the four slander *per se* categories.
>
> [*Ward v. Zelikovsky, supra,* 136 *N.J.* at 541, 643 *A.*2d 972 (citations omitted).]

Therefore, even though the slander *per se* doctrine continues to be a part of New Jersey's law of defamation,[3] the Court's characterization of the doctrine as "a relic from tort law's previous age" and its conclusion that "the trend should be toward elimination ... of

---

[3] Missouri and Kansas have eliminated slander *per se* and the corollary "presumed damages" rule. Consequently, these states now require a showing of actual damage to reputation to establish any cause of action for defamation. *Nazeri v. Missouri Valley College,* 860 *S.W.*2d 303, 308–10, 312–13 (Mo.1993); *Zoeller v. American Family Mut. Ins. Co.,* 17 *Kan.App.*2d 223, 834 *P.*2d 391 (1992); *see also Walker v. Grand Cent. Sanitation Inc.,* 430 *Pa.Super.* 236, 634 *A.*2d 237, 242–44 (1993), *appeal denied,* 539 *Pa.* 652, 651 *A.*2d 539 (1994).

We also note that the First Amendment precludes an award of presumed damages for a defamatory statement involving an "issue of public concern." *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 *U.S.* 749, 757–61, 105 *S.Ct.* 2939, 2944–46, 86 *L.Ed.*2d 593, 601–04 (1985); *Gertz v. Robert Welch, Inc.,* 418 *U.S.* 323, 348–50, 94 *S.Ct.* 2997, 3011–12, 41 *L.Ed.*2d 789, 810–11 (1974). However, defendants have not argued that Nassimos' statements about plaintiff involved any "issue of public concern."

the *per se* categories," *ibid.,* suggests that lower courts should invoke the slander *per se* doctrine only in cases where it clearly applies.

Plaintiff argues that Nassimos' statements that he has "mob connections" and would "order a hit" upon Nassimos unless Nassimos stopped complaining about plaintiff and the Board constituted slander *per se* because they implied that he had committed a crime. The Restatement of Torts describes this category of slander *per se* as follows:

One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be

    (a) punishable by imprisonment in a state or federal institution, or

    (b) regarded by public opinion as involving moral turpitude.

           [*Restatement (Second) of Torts* § 571 (1977).]

However, it does not constitute slander *per se* "to suggest that another is capable of committing a crime" or "to charge another with a criminal intention or design, if no criminal act is charged." *Restatement (Second) of Torts* § 571 cmt. c (1977).

▉ We are satisfied that a statement that a person has "mob connections" does not constitute an assertion that he has committed a crime. It is not uncommon for the mass media to report that an entertainer or other celebrity has "mob ties" or "mob connections." The ordinary understanding of such a story is not that the celebrity himself has committed crimes but rather that he associates with criminals. Consequently, even though a statement that a person has "mob connections" may be defamatory, it is not slander *per se* because it does not allege the commission of a crime. *See Privitera v. Town of Phelps, supra,* 435 *N.Y.S.*2d at 404–05; *contra Clemente v. Espinosa, supra.*

▉ Nassimos' further alleged comment that he had information plaintiff would "order a hit on me" if Nassimos did not "stop complaining against him and the Board" is not slander *per se* because it merely alleges plaintiff's intention to commit a crime sometime in the future rather than a past criminal act. *See*

*Restatement (Second) of Torts,* § 571 cmt. c. Although plaintiff argues that this comment implied that he was a member of an ongoing criminal enterprise because only such a person could "order a hit," we believe that such a comment could be just as easily construed to mean that plaintiff would ask his "mob connections" to kill Nassimos as a favor or in exchange for the payment of money. *Cf. Nunez v. A–T Fin. Info., Inc.,* 957 *F.Supp.* 438, 441 (S.D.N.Y.1997) ("In assessing a claim of slander *per se,* ... [i]nnuendo is not available to enlarge the meaning of the statement beyond the significance expressed by the words themselves."). The circumstance that Nassimos' comment was uttered in the midst of a heated personal attack upon plaintiff, as Chairman of the Board, for allegedly leaking information about a decision in a pending disciplinary matter, reduces the possibility that the audience reasonably could have understood Nassimos was asserting that plaintiff had committed a crime. *Cf. Ward v. Zelikovsky, supra,* 136 *N.J.* at 532, 643 *A.*2d 972 ("If the comment occurred during an argument or is an outburst unrelated to the general topic of discussion, ... a reasonable listener is less likely to accord to the challenged statement its literal meaning."). In view of the disfavor with which the slander *per se* doctrine is currently held, courts should not permit speculative inferences regarding the possible meaning of an alleged defamatory statement to support a verdict in favor of a plaintiff who is unable to show any actual damage to his reputation.

Affirmed.