[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMARY JUDGMENT
The plaintiff corporation brings this one count defamation action against the defendant for derogatory statements the defendant made in a letter he wrote and sent to several public officials. The defendant moves CT Page 5574 for summary judgment.
THE UNDISPUTED FACTS
The plaintiff is a corporation that operates a private social club. The building that houses the club was formerly a school building owned and operated by the Waterbury Board of Education. At some point, the plaintiff bought the building. In 1994, the plaintiff sought and obtained permission from the Waterbury Zoning Board to convert the building from a school into a social club facility. In 1999, the club applied for and obtained a permit to serve liquor. The defendant, a private citizen who resides in the neighborhood, is unhappy with the increased noise and traffic he perceives to be associated with the activities of the club.
On October 24, 1999, after consulting with some of his neighbors, the defendant sent a letter to the President of the Waterbury Board of Aldermen, with a copy to the minority leader of the Board of Aldermen and to the Waterbury Zoning Board. No proceeding was then pending before the Board of Aldermen or the Zoning Board regarding the club. The letter is three pages long, and it is signed by the defendant. In the letter, the defendant complains that the club has disrupted the quiet residential character of the neighborhood. The defendant asks the recipients of the letter to "apprise (sic) the situation and if possible take proper action to rectify it."
The letter also contains the following statements, set forth here verbatim, that form the basis of the plaintiffs defamation claim:
 "The rumors with the elderly go from having political connection in both state and local, to Mafia connections to rubber stamp whatever they want. We wish to live out our lives without fear. They as Italians do have the ethnic mussel to influence policy in both state and city dept. on the side of what is in their best interest for their Social Club. . . .
 "Would Club Members allow another ethnic group to invade their families quality of life as they are doing to us. . . .
 "Do to rumors of Mafia and political connections my own wife would not sign the petitions for fear of having someone setting our house on fire. . . ."
The plaintiff corporation claims these statements constitute libel. The complaint alleges that "the reputation and good standing in the community CT Page 5575 of the Lega Siciliana Social Club, Inc., has been damaged and besmirched." Complaint, dated May 15, 2000, para. 10. Thereafter the plaintiff amended the prayer for relief to make a claim for compensatory damages. Amendment, dated October 10, 2000.
THE STANDARDS FOR SUMMARY JUDGMENT
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Appletonv. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000). The party seeking summary judgment has the burden of showing the absence of any genuine issue of material fact, such that he is entitled, under principles of substantive law, to a judgment as a matter of law. Id.
In ruling on a motion for summary judgment, the court's function is not to decide the issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988). Summary judgment is appropriate only if a fair and reasonable person could conclude only one way, based on the substantive law and the undisputed material facts. Miller v. United TechnologiesCorp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
THE DEFENDANT'S GROUNDS FOR SUMMARY JUDGMENT
The defendant moves for summary judgment on what the court discerns as two grounds.[1] The first is that the defendant's statements were absolutely privileged since the statements were contained in a document that was filed in a quasi-judicial proceeding or, in the alternative, filed as an attempt to initiate such a proceeding. The second is that the plaintiff has failed to prove that it suffered any cognizable damage or harm, an essential element of an action for libel. This second ground is dispositive.
THE LAW OF LIBEL
It is clear in Connecticut that a corporation can sue for libel. SeeMonroe v. Crandall, 3 Conn. App. 221, 486 A.2d 657 (1985). In Monroe, the defendant made untrue and disparaging remarks about the ability of the plaintiff corporation to fulfill its contractual obligations. The Appellate Court held that the plaintiff corporation was entitled to maintain an action for libel.
The common law and the law in Connecticut have long recognized two kinds of libel: libel pre quod, and libel per se. In an action for libel per quod, the plaintiff must plead and prove actual damages in order to recover. D. Wright J. Fitzgerald, Connecticut Law of Torts (2d Ed.) CT Page 5576 § 146; Battista v. United Illuminating Co., 10 Conn. App. 486, 491
(1987). In an action for libel per se, the law conclusively presumes the existence of an injury to the plaintiffs reputation and the plaintiff is not required to prove it. Id., 492
LIBEL THAT REQUIRES PROOF OF ACTUAL DAMAGE
In the submissions on summary judgment, the plaintiff has failed to produce any evidence of actual damage. There is no evidence whatsoever that the plaintiffs gross receipts from its restaurant and bar functions decreased. There are no submissions that indicate whether the plaintiff corporation relied primarily on membership solicitation, charitable contributions, or food and beverage sales for its maintenance. In any case, there is certainly no evidence that revenues or support from any source diminished as a result of the defendant's statements. There is simply no evidence of any kind that the plaintiff suffered any actual damage here.
LIBEL PER SE
To survive summary judgment, the plaintiffs cause of action must be construed as alleging libel per se. Whether a publication is libelous per se is a question for the court. Charles Parker Co. v. Silver City CrystalCo., 142 Conn. 605, 612, 116 A.2d 440 (1955); Flanagan v. McLane,87 Conn. 220, 222 (1913). The question then is whether the defendant's statements fall into either of the two applicable categories of libel per se: commission of a crime of moral turpitude, or lack of integrity or skill in the conduct of one's business or profession.
While it is true that a corporation is capable of committing a crime[2], the words of the defendant do not accuse the Lega Sicilian Social Club, Inc., of any criminal conduct or offense. The defendant makes two statements of fact that might constitute this type of libel per se if the statements were about an individual or a group of members of the club.
Commission of a Crime
One is that certain members of the club or persons associated with the club unfairly utilized their political connections to obtain favorable zoning treatment for the club. This first statement does not on its face accuse any such member of a crime. Although one method of obtaining such a favor is to bribe a public official, as opposed to relying on mere friendship with a particular official or the good will of public officials generally, the defendant has not precisely alleged such criminal conduct, nor can it fairly be understood by innuendo. For CT Page 5577 example, the statement "They as Italians do have the ethnic mussel (sic) to influence policy in both state and city dept. on the side of what is in the best interest for their Social Club" alleges no crime, only that a certain ethnic group is influential in politics. Such a statement, true or not, is not actionable as libel per se.
The second is that certain members of the club are connected to the Mafia, an organization which is commonly understood to be a violent and corrupt criminal organization. An accusation of membership in a corrupt organization does not necessarily translate into libel per se, absent an accusation that the libelee engaged in some actual criminal conduct. See, Biondi v. Nassimos, 300 N.J. Super. 148, 692 A.2d 103 (1997); also compare Privitera v. Phelps, 79 App.Div.2d 1, 435 N.Y.S.2d 402 (1981) withClemente v. Espinosa, 749 F. Sup. 679 (E.D. Pa. 1990). But in this case, the club itself is not accused of committing any crime, and thus may not maintain an action for libel per se in this category.
Lack of Skill or Integrity in the Conduct of One's Business or Profession
The only other category of libel per se that would apply is if the defendant's statements constitute an accusation that the plaintiff lacks skill or integrity in the conduct of one's profession or business. The Restatement (Second), Torts § 561, suggests that this is really the only category of libel per se that can apply to a corporate plaintiff. But not every insult, however untrue, directed at a corporate plaintiff necessarily implicates skill or integrity in the conduct of one's business or profession.
In Proto v. Bridgeport Herald Corp., 136 Conn. 557, 567-68, 72 A.2d 820
(1950), the accusation against the plaintiff was that he was selling "black market" butter. The plaintiff was in the business of selling groceries, such as butter. Thus the court had no trouble in finding the accusation to be one "calculated to cause injury to one in his profession or business." But the Restatement continues to recognize that derogatory statements directed at one who operates a business must affect the core business or profession that is in issue and not a personal or tangential matter with which the plaintiff is involved. Restatement (Second), Torts, § 573. See also, Camp v. Martin, 23 Conn. 86 (1854). The statement must be made with reference to a matter of significance and importance in the conduct of the business or profession, rather than a more general reflection upon the plaintiffs character or qualities, where such special significance is lacking. Prosser and Keeton, The Law of Torts, 5th Ed. (1984) § 112, p. 791-92.
 Thus it is actionable without proof of damage to say of a physician that he is a butcher . . . or of an CT Page 5578 attorney that he is a shyster, of a school teacher that he has been guilty of improper conduct as to his pupils, of a clergyman that he is the subject of scandalous rumors, of a chauffeur that he is habitually drinking, of a merchant that his credit is bad or the he sells adulterated goods, of a public officer that he has accepted a bribe or has used his office for corrupt purposes, or that he is a Communist, or of any of these that he is dishonest, incompetent, or insane — since these things obviously discredit him in his chosen calling.
 On the other hand it has been held not to be actionable without proof of damage to say of a gas company clerk that he has been consorting with prostitutes, since he might still be a satisfactory clerk; or of a stenographer that she does not pay her bills, since she might still be a good stenographer; or of a physician that he has committed adultery, of a dancing teacher that he has been drunk, of an attorney that he has lost thousands, or of an engineer that he is a Communist, or of a Congressman and that he is anti-Semitic.
Id. (citations omitted).
The "business" of the Lega Siciliana Social Club, Inc., is that of operating a social club. To the extent that the defendant accuses the plaintiff corporation of any lack of integrity, it is not in the running of the club itself, but in the methods by which certain of the club's members obtained permits so that the club could operate on the premises that it now occupies. In fact the entire upshot of the defendant's letter is that the plaintiffs club is quite successful, too successful for the defendant's taste, and no lack of skill or integrity in the running of the actual business is alleged or can be implied from the contents of the defendant's letter.
The remaining question is whether this category of per se defamation is the same for libel as for slander. As to this issue, there has been a split of authority. For example, the Restatement (Second), Torts, § 569, states: "One who falsely publishes matter defamatory of another in such a manner as to make the publication a libel is subject to liability to the other although no special harm results from the publication." As the old-fashioned distinctions between oral and written defamation blur, however, the trend is to discard this seemingly artificial separation. See, e.g., Charles Parker Co. v. Silver City Crystal Co., supra, 612; CT Page 5579Rocci v. MacDonald-Cartier, 731 A.2d 1205, 1210 (N.J.Super.1999).
Moreover, the entire issue of "presumed damage" to reputation has been cast into doubt by the case of Gertz v. Robert Welch, Inc., 418 U.S. 323,94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), in which the U.S. Supreme Court held that where speech, written or spoken, was concerned, the protections of the First Amendment only give way if the plaintiff can show some "actual injury."
In Connecticut, any earlier distinction between the requirements for slander per se and libel per se were resolved in the case of Proto v.Bridgeport Herald Corporation, supra, where the Supreme Court held that libel per se, like slander per se, must fall into one of several discrete recognized categories of defamation to be actionable per se. In Proto, as in the instant case, the Court held that the defamation must fall into either of two categories: "(1) libels charging crimes and (2) libels
which injure a man in his profession and calling." Id., 566 (emphasis supplied).
CONCLUSION
The statements of the defendant do not constitute libel per se. The plaintiff has failed to present a genuine issue of material fact as to whether it suffered any actual damage as a result of the defendants statement. Accordingly, the defendant is entitled to summary judgment.
 ___________________ Patty Jenkins Pittman, Judge