**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2149-18T4

PAUL MARINACCIO,

    Plaintiff-Appellant,

v.

MATTHEW CANGIALOSI
and DUNELLEN POLICE
DEPARTMENT,

    Defendants-Respondents.

_____

Argued telephonically May 28, 2020 –
Decided July 21, 2020

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law
Division, Middlesex County, Docket No. L-5978-16.

Paul Marinaccio, appellant, argued the cause pro se.

Kurt J. Trinter argued the cause for respondents (Kelso
and Burgess, attorneys; Kurt J. Trinter, on the brief).

PER CURIAM

Plaintiff pro se Paul Marinaccio appeals from two December 7, 2018 orders,[1] one granting summary judgment dismissal to defendants Officer Matthew Cangialosi and the Dunellen Police Department and another denying plaintiff's cross-motion for summary judgment, as well as an October 26, 2018 order denying his request to re-open discovery. We affirm.

Plaintiff inherited a 1993 tan Ford Explorer from his father and transferred its title to himself. The Explorer was registered under the father's name and bore plates beginning with the letter "Z" (Z plates), which were paid through January 2015. Plaintiff bought new plates for the Explorer beginning with the letter "N" (N plates). However, he later decided he would rather transfer his father's Z plates to himself, so he kept the Z plates on the car and put the N plates inside the Explorer intending to return them.

The chain of events that led to this appeal began on October 13, 2014, when the Explorer was parked in the Dunellen train lot, with a valid parking

---

[1] Plaintiff's notice of appeal lists orders dated April 27, June 8, July 6, August 3, October 26, and November 9, 2018. However, plaintiff only addresses certain orders in his legal arguments, so those unaddressed are deemed waived under State v. Lefante, 14 N.J. 584, 591 (1954), leaving only the December 7, 2018 orders granting summary judgment and denying plaintiff's cross-motion for summary judgment and to re-open discovery, and the October 26, 2018 order denying plaintiff's request for more discovery.

A-2149-18T4

permit hanging from the window, bearing the Z plates with the N plates inside the car. Officer Cangialosi of the Dunellen Police Department was on patrol and came across an unregistered silver 2001 Toyota with K plates. He issued a summons to the owner, M. Torruella. The K plates are listed on the summons issued to Torruella, and the Automatic License Plate Reader (ALPR)[2] logs, and are reflected on the Mobile Data Transmitter (MDT) log. Plaintiff's Explorer was nearby, and Cangialosi ran the Z plate number through his MDT. Because the Z plate number came up as not associated with any vehicle, he ran the Z plate three times, then called dispatch to see if he could find out who the registered owner (RO) was. The audio of the exchange is as follows:

> Cangialosi:  Issuing a summons to [K][plates] . . . expired reg[istration] train lot . . . look up . . . plate . . . .
>
> Diachini:  Go ahead.
>
> Cangialosi:  [Z plates] for Ford Explorer older model . . . tan, it's filled with a bunch of garbage and it has the back window up—the hatch. It's open.

---

[2] The ALPR is a system that automatically scans license plates as the police car drives by; it alerts an officer whether any of the plates it scans are associated with arrest warrants or expired registration, and is also used for other investigative purposes.

Male voice:    Ford Explorer . . . let's see if the RO . . .
               Marinaccio is the last name. See if he
               reregistered this truck. Were you able to
               get a VIN[3] from the previous plate?

Cangialosi:    Send me a hook train station lot south
               side unregistered vehicle.

Male voice:    It did expire? Or it's just out of the
               system now? . . . [W]ere you able to find
               an expiration on the . . . .

Cangialosi:    Don't go crazy I'll just write it for
               fictitious.

Although the Z plates did not show as registered to any vehicle, plaintiff's

name came up because a 2012 traffic ticket was issued by another officer under

the Z plates in plaintiff's name. Cangialosi wrote four summonses to plaintiff,

based on the traffic ticket information, for "driving or parking" an unregistered

motor vehicle, N.J.S.A. 39:3-4; obstruction of the windshield, N.J.S.A. 39:3-74;

failure to have a current inspection sticker, N.J.S.A. 39:8-1; and fictitious plates,

N.J.S.A. 39:3-33. Cangialosi then had the Explorer towed due to the fictitious

plates.

When plaintiff went to pick up the Explorer from the tow yard on October

16, the Z plates were not on it, and the tow yard had his N plates. Plaintiff paid

---

[3] Vehicle Identification Number.

$224 to release the vehicle. The tow log and towing release list the Explorer as "new plate N" with a notation of "Fict. Plates," and the towing release states the reason for tow was "fict[.] plates."

Plaintiff contested the summonses at a May 13, 2015 municipal court trial. When plaintiff explained he did have a valid registration under the N plates, which were inside the car at the time of the summonses, the prosecutor dropped the charge for driving an unregistered vehicle.

Cangialosi testified regarding the other charges. During cross-examination by plaintiff, Cangialosi was presented with a Computer Aided Dispatch (CAD) incident report plaintiff received through an OPRA[4] request to the Borough of Dunellen for the date of the summonses. The CAD report listed the K plate at the top. Under "Vehicles" on the second page, it lists "Vehicle [One]" as K plate, silver Toyota Highlander, Torruella's car. Under "was towed" the box is blank. Under "Vehicle [Two]" it lists Z plate, tan Ford Explorer, and under "was towed" the box is checked. Thus, it accurately reflected the Z plate was on plaintiff's tan Ford Explorer.

Cangialosi explained that he typed in the K plates, and they were probably screwed off the car before it was towed and sent to headquarters to be sent back

_____

[4] Open Public Records Act, N.J.S.A. 47:1A-1 to -13.

to the Motor Vehicle Commission (MVC). He testified "[t]he plates that were on [plaintiff's] car c[a]me back to a Toyota." Cangialosi asserted that he ran the VIN, the car was registered to plaintiff, the registration had expired in July 2014, and that plaintiff must have reregistered with a third number, which was the N plate. Cangialosi testified that he saw the K plate physically on plaintiff's Explorer, and that he did not use the ALPR. Plaintiff then asserted Cangialosi should have used the ALPR instead of entering the plate number manually, and plaintiff stated he thought the CAD "included another stop that wasn't [his]."

Plaintiff pled guilty to the failure to inspect charge. The municipal judge dismissed the windshield obstruction charge but convicted plaintiff of the fictitious plates charge based on Cangialosi's inaccurate testimony that the K plates were attached to plaintiff's car when in fact the N plates were on the car.

Plaintiff filed an appeal de novo to the Law Division for the fictitious plate charge, and on October 8, 2015, was acquitted after the judge listened to the dispatch audio. The judge found "a major discrepancy in the . . . testimony," because Cangialosi said he ran the VIN, which was how he said he "came up with certain very important information, namely what the proper plate was and everything else," but there was no reference to the VIN in the audio. The judge

6

found Cangialosi's testimony "simply was not factually accurate at the time of [the municipal] trial."

On January 6, 2016, plaintiff sent a notice of tort claim to the Dunellen Police Department advising he would bring suit against Cangialosi. In October 2016, plaintiff filed his complaint against Cangialosi and the Dunellen Police Department alleging twelve counts: (1) unlawful search and seizure for the October 13 incident; (2) defamation and slander for the May 13 trial; (3) false use and institution of legal process for both the October 13 incident and May 13 trial, as well as discovery; (4) deprivation of freedom of expression for the October 13 incident; (5) discrimination and deprivation of equal rights for the October 13 incident; (6) deprivation of equal protection and due process for both the October 13 incident and the May 13 trial; (7) fraud for the May 13 trial; (8) negligence and or gross negligence in the hiring, supervision, and retention of defendant Cangialosi and defendant Doe for both the October 13 incident and the May 13 trial; (9) vicarious liability for both dates; (10) federal and state constitutional violations, violation of 42 U.S.C. § 1983 (§ 1983) and the New Jersey Civil Rights Act of 2004 (NJCRA), N.J.S.A. 10:6-1 to -2 for both dates; (11) conspiracy to commit a tort for the May 13 trial as well as days leading up

7

to it; and (12) intentional infliction of emotional distress for both the October 13 incident and the May 13 trial.[5]

Defendants denied all claims and asserted defenses including immunity under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. The original discovery end date was March 8, 2018; after being extended several times, written discovery was due May 18 with all depositions to be completed by August 6, 2018.

During his deposition, plaintiff testified that he had not been to any therapists, psychiatrists, psychologists or social workers as a result of his stress and anxiety he alleged stemmed from the actions of defendants. He stated he had a prior experience with the Dunellen police department where police took his father to the hospital, which plaintiff thought was unnecessary and which left the family with a huge bill; as a result, plaintiff was then "at war" with the Dunellen Police Department in his mind.

Plaintiff's theory was that the ALPR scanned Torruella's plates and alerted Cangialosi to the expired registration, after which Cangialosi saw plaintiff's car

---

[5] Plaintiff filed an amended complaint changing count eleven to concealment or destruction of evidence and adding count thirteen, retaliation for exercise of constitutionally protected rights for prosecuting and persecuting him after seizing his property in retaliation for exercising his right to use the court to defend himself and fight injustice.

parked nearby and something about it "pissed him off." Plaintiff suspected it related to the Dunellen ordinance against cross-dressing, and that Cangialosi removed the K plates from Torruella's car and put them on plaintiff's Explorer so he could find a reason to tow it. Plaintiff conceded he had never met Cangialosi before, but asserted "local police get together on things," and also suspected Cangialosi might have seen legal papers in his car regarding his lawsuit against police in another town.

Plaintiff filed numerous additional motions including a motion to compel more specific answers to interrogatories. The court gave plaintiff leave to file an amended complaint and extended discovery to October 5, but denied plaintiff's motion to compel production of certain enumerated documents.

On October 12, 2018, defendants moved for summary judgment. Defendants asserted that they were protected by the immunities afforded by the TCA for all counts alleging torts; plaintiff failed to file a timely notice of claim, which barred his claims in counts eight and eleven; count two should be dismissed because Cangialosi is protected by qualified privilege; and that plaintiff failed to file his complaint within the one year statute of limitations for defamation. Defendants also asserted plaintiff could not meet the requirements

of <u>Monell</u>[6] to successfully prosecute any civil rights issues against the police department; plaintiff could not meet any prima facie requirements for any of his causes of actions, regardless of immunities, privileges, and statutes of limitations; and plaintiff was not entitled to punitive damages, so the entire complaint should be dismissed as a matter of law.

In his accompanying affidavit, Cangialosi still asserted that he ran the VIN and that it was visible on the dashboard, although this is not supported by anything in the record, as there is no mention of a VIN in the audio or in any of the logs surrounding plaintiff's summonses. He stated that while he testified at the municipal trial that the K plates were on the Explorer, he now realized that the CAD report plaintiff showed him during cross-examination confusingly had both Torruella's summons and plaintiff's on the same report, and that he "mistakenly testified that [plaintiff's] Explorer displayed the K plates" when he issued the summonses.

Cangialosi certified the CAD was the only report available to him during his testimony, and that after reviewing the summonses and the CAD report it was "clear" to him now that the Explorer did have fictitious plates, but they were

---

[6] <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).

10

the Z plates and not the K plates as he testified. He asserted he had never met defendant before the municipal trial in May 2015.

On October 28, 2018, the trial judge denied plaintiff's motion to re-open discovery, because plaintiff's demands were cumulative, repetitive, and not propounded in accordance with the New Jersey Court Rules, and the expense and burden of having defendants reproduce documents already in plaintiff's possession was not justifiable and added no value to the litigation, thereby outweighing its likely benefit.

Plaintiff was granted leave to extend time to file and serve opposition to summary judgment and to file a cross-motion for summary judgment. He filed a cross-motion for summary judgment on November 20, 2018.

Plaintiff contended the last time he saw the Z plates properly displayed on his vehicle was on October 12, 2014, and that Cangialosi gave false testimony that he did not use the ALPR the day he issued the summonses. Plaintiff also asserted many allegations untethered to the record, including that Cangialosi searched his vehicle prior to October 13, finding items in plaintiff's car that indicated plaintiff was gay and had sued a police officer in another town. He contended the summonses issued to him were to harass him because Cangialosi reasonably suspected plaintiff might violate the anti-cross-dressing ordinance.

11

The judge denied plaintiff's motions and granted summary judgment dismissal in favor of defendants. This appeal followed.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

Under Rule 4:46-2(c), a motion for summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." A genuine issue of material fact exists where, when viewed in the light most favorable to the nonmoving party, a rational factfinder could find in favor of the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 540 (1995). While a court ruling should not bar a "deserving litigant" from trial, "it is just as important that the court not 'allow harassment of an equally deserving suitor for immediate relief by a long and worthless trial.'" Id. at 540-41 (quoting Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 77 (1954)).

"[W]here there is a [p]rima facie right to summary judgment the party opposing the motion is required to demonstrate by competent evidential material

that a genuine issue of a material fact exists," to protect against "groundless claims and frivolous defenses." Heljon Mgmt. Corp. v. DiLeo, 55 N.J. Super. 306, 312 (App. Div. 1959) (citing Robbins v. Jersey City, 23 N.J. 229, 240-41 (1957)).  It is not enough to produce "bare conclusions lacking factual support" or "self-serving statements." Worthy v. Kennedy Health Sys., 446 N.J. Super. 71, 85 (App. Div. 2016) (citations omitted).  The non-movant must produce "competent evidential material beyond mere speculation and fanciful arguments." Ibid. (quoting Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014)).

Plaintiff argues that there are disputed facts largely based on the now-retracted testimony of Cangialosi that the Explorer bore K plates and the VIN number was called in.  However, these facts are only supported by Cangialosi's unreliable municipal court testimony, which plaintiff himself contradicted when he said the VIN was not ever visible because his things were wedged between the dash and the windshield.  Plaintiff also argues the trial judge erred in admitting Cangialosi's affidavit because it contradicts some of his municipal court testimony.  Although we recognize plaintiff's distrust of Cangialosi, the incongruity between Cangialosi's municipal court testimony and his affidavit

does not implicate a coherent cause of action. Plaintiff's additional arguments are bare conclusions lacking evidential support.

On a review of the record, we find the trial judge properly granted summary judgment on all counts. As to Cangialosi, the trial judge dismissed all constitutional claims in counts one, three, four, five, six and ten after finding Cangialosi acted objectively reasonably, based on the information available to him at the time, when he issued the summonses to plaintiff and had the Explorer towed, which affords him qualified immunity for constitutional claims against him. We agree.

The doctrine of qualified immunity serves to "shield 'government officials performing discretionary functions generally . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Morillo v. Torres, 222 N.J. 104, 116 (2015) (alteration in original) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A qualified-immunity defense poses "a significant hurdle for plaintiffs seeking to recover for asserted violations of civil rights at the hands of law-enforcement officials." Ibid. In New Jersey, the standard is applied to civil rights claims brought against police officers during

A-2149-18T4

the course of their discretionary functions, including arresting or charging an individual based on probable cause. Id. at 117.

A two-prong test determines whether a police officer is entitled to qualified immunity: (1) whether facts alleged taken in the light most favorable to the party alleging the injury show the challenged conduct violated a statutory or constitutional right, and (2) whether the right was clearly established. Id. at 117-18 (citations omitted). The prongs may be analyzed in any order, and "[t]he dispositive point in determining whether a right is clearly established is whether a reasonable officer in the same situation clearly would understand that his actions were unlawful." Id. at 118.

A police officer can defend a claim "by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence." Id. at 118-19 (citation omitted). The question is whether a police officer could reasonably believe his or her acts were lawful in light of clearly established law and the information the officer possessed at the time. Kirk v. City of Newark, 109 N.J. 173, 184 (1988). The issue of qualified immunity is one that ordinarily should be decided well before trial, and summary judgment is an appropriate vehicle for deciding that threshold question. Morillo, 222 N.J. at 119. Where probable

cause is not present and the trial court is determining whether a reasonable law enforcement officer would have believed that probable cause to charge did exist, "it is for the judge to 'decide whether the defendant has proven by a preponderance of the evidence that his or her actions were reasonable under the particular fact.'"  Ibid. (quoting Schneider v. Simonini, 163 N.J. 336, 360 (2000)).

Considering whether Cangialosi's actions were objectively reasonable, we note that under N.J.S.A. 39:3-4, "[a] person owning or having control over any unregistered vehicle shall not permit the same to be parked or to stand on a public highway."  A police officer is authorized to remove any unregistered vehicle from the public highway to a storage space or garage, and the expense of the removal and storage of the vehicle is to be borne by the owner of the vehicle.  N.J.S.A. 39:3-4.  Further, "[n]o person shall drive a motor vehicle" where the owner of the vehicle has not complied with statutory requirements "concerning the proper registration and identification thereof, nor drive a motor vehicle which displays a fictitious number, or a number other than that designated for the motor vehicle in its registration certificate."  N.J.S.A. 39:3-33.

A-2149-18T4

Thus, notwithstanding Cangialosi's unreliable testimony at the municipal trial, because the Z plates were not readily associated with the Explorer, and the record supports an inference Cangialosi never looked up the VIN to see the N registration, we discern no support for the proposition Cangialosi knew the Explorer was in fact registered. While the dispatcher said the name "Marinaccio," plaintiff's last name, the record reflects this was discovered because of plaintiff's prior ticket for obstructing traffic issued under the Z plates.

We reject plaintiff's argument that the plain language of the statute only prohibits driving on public highways and, since the Explorer was parked in a municipal parking lot, he was not operating it in violation of the statute. A "[h]ighway" is broadly defined as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." N.J.S.A. 39:1-1. Additionally, driving and operation of a vehicle "may be proved by any direct or circumstantial evidence—as long as it is competent and meets the requisite standards of proof." State v. George, 257 N.J. Super. 493, 497 (App. Div. 1992) (holding a vehicle's operating condition combined with defendant's presence behind the steering wheel permits the logical conclusion of an intent to drive). Plaintiff's Explorer was parked in a parking lot, not a storage space or garage, and it is logical in

17

those circumstances to believe that on his return he would drive it away from the parking lot in its apparently-unregistered state.

While plaintiff argues the Z plates were paid through January 2015 and should have been valid, he bought N plates for the Explorer in his own name, and N.J.S.A. 39:3-30 states that "[u]pon the transfer of ownership. . . of any motor vehicle. . . its registration shall become void," and if the vehicle is sold, "the original owner shall remove the license plates therefrom, and surrender them to the [MVC]." And while, as plaintiff argues, a surviving child of a "deceased registered owner of any motor vehicle in whom title thereto shall vest . . . shall, upon application to the director, and upon the payment of a fee of $4.50, be entitled to have the registration of such vehicle transferred to his or her name," ibid., the record reflects plaintiff paid an additional $50, so it cannot be inferred that type of transfer occurred that would tie the Z plates to the Explorer at the time the summonses were issued.

Therefore, Cangialosi acted objectively reasonably based on the information he had at the time when he towed plaintiff's car for bearing license plates that were not associated with the car without any indication that it was registered. He has qualified immunity in that the information available indicated it was a lawful exercise. Other allegations plaintiff urges us to consider are not

18

supported by documentation in the record. Because Cangialosi acted objectively reasonably based on the information he had at the time, plaintiff's bare allegation of malice is not sufficient to overcome his qualified immunity. See Wildoner v. Borough of Ramsey, 162 N.J. 375, 386 (2000) (holding an allegation of malice will not defeat immunity where the defendant acted objectively reasonably).

The trial judge dismissed claims in count two relating to defamation, as well as claims in count seven for fraud at the May 13 trial, because plaintiff did not timely file his notice of claim. The judge found two potential dates of accrual, giving plaintiff all reasonable inferences from the evidence, which were May 13, 2015, the date of the trial where all charges but the fictitious plates charge were dismissed, and October 8, 2015, when the Middlesex County Law Division reversed plaintiff's municipal conviction on fictitious plates.

Under N.J.S.A. 59:8-8, a claim against a public entity for injury or damage to person or property shall be presented no later than the ninetieth day after the accrual of the cause of action. A claimant who fails to do so may, in the trial court's discretion, be permitted a notice within one year after the accrual "upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances" for his failure to timely file. N.J.S.A. 59:8-9. As a review of the record indicates,

extraordinary circumstances are not present here, and these counts were properly dismissed since plaintiff's notice of tort claim was filed January 6, 2016, well over ninety days after the May 13, 2015 trial.

The trial judge also dismissed counts eight and eleven of plaintiff's amended complaint, because both defendants are immune under the TCA. Under the TCA, "[a] public employee is not liable if he acts in good faith in the execution of enforcement of any law" with the exception of false arrest or false imprisonment. N.J.S.A. 59:3-3. "The same standard of objective reasonableness that applies in [§] 1983 actions also governs questions of good faith arising under the [TCA], N.J.S.A. 59:9-3." Wildoner, 162 N.J. at 387. Because Cangialosi acted objectively reasonably in issuing the summons for fictitious plates and failure to register based on the information he had at the time, he is immune under the TCA as well, and the trial judge appropriately dismissed counts eight and eleven as to Cangialosi. Further, there is no competent evidence in the record to show any alteration or concealment of discovery.

As to the Dunellen Police Department, "[e]xcept as otherwise provided by this act,[] a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other

person," N.J.S.A. 59:2-1(a), and "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable," N.J.S.A. 59:2-2. Therefore, because Cangialosi is not liable, the trial judge properly dismissed counts eight and eleven as to Dunellen police department as well.

The trial judge dismissed the remaining claims in count two, defamation and slander, both because plaintiff did not file within the statute of limitations and because he did not prove damages or fault.

Where the act alleged is not slander per se, which is a defamatory statement of a criminal offense, a loathsome disease, conduct, characteristics, or a condition incompatible with his business, trade, or office, or serious sexual misconduct, a plaintiff is required to show "special damages" of a "harm of a material or pecuniary nature" resulting from damage to his reputation, such as people refusing to associate with him or that his business or personal relationships had been "seriously disrupted." Biondi v. Nassimos, 300 N.J. Super. 148, 153-54 (App. Div. 1997) (citations omitted). The plaintiff must demonstrate actual harm to his or her reputation from either concrete proof or third-party testimony; the plaintiff's testimony alone or inferred damages are not enough. Ward, 136 N.J. at 540.

Here, Cangialosi's statements were merely regarding municipal summonses and not the subjects enumerated in Biondi, and there is no concrete proof that plaintiff suffered damage to his reputation, such as people refusing to associate with him or that his business or personal relationships were disrupted. Further, as the judge noted, there is a one-year statute of limitations on libel or slander actions, and plaintiff's October 12, 2016 complaint was over a year after Cangialosi's alleged defamatory comments at the May 13, 2015 municipal trial. See N.J.S.A. 2A:14-3. Therefore, we also find dismissal of these claims was appropriate.

The judge dismissed count three after finding the allegation of abuse of process was inappropriate because the summonses were not criminal but municipal, and plaintiff also failed to provide any evidence of actual malice on behalf of Cangialosi.

Considering that plaintiff's claims in his complaint that Cangialosi maliciously made knowingly false charges and forced plaintiff to defend against them sounds more in a malicious prosecution claim, plaintiff's claim also fails in this regard. "In New Jersey, there is a distinction between the elements of a malicious prosecution claim depending on whether the underlying action was criminal or civil in nature," and if it is civil, the plaintiff must show "special

damages." Klesh v. Coddington, 295 N.J. Super. 51, 58 (Law Div. 1996). However, whether civil or criminal, the plaintiff must show each of the elements, which includes malice, for the claim to survive. Ibid. See also Penwag Prop. Co., Inc. v. Landau, 76 N.J. 595, 598 (1978). Malice has been defined as an intentional wrongful act without just cause or excuse. LoBiondo v. Schwartz, 199 N.J. 62, 93-94 (2009) (citation omitted). Since even a wrongful act will be excused if founded on probable cause, malice may "be inferred from a finding that a defendant has neither probable cause nor a reasonable belief in probable cause." Ibid.

Here, it was undisputed that Cangialosi did not know plaintiff at the time he issued the summonses, and, as the record reflects, Cangialosi acted objectively reasonably in doing so, so plaintiff's claim fails because he cannot show malice. Therefore, summary judgment on this claim was also appropriate.

The judge dismissed count four as "plaintiff presented no evidence or cognizable claims of the alleged violations" of plaintiff's freedom of expression. There is no supporting factual evidence in the record to reasonably infer that Cangialosi or the Dunellen Police Department knew plaintiff was gay. It is undisputed that Cangialosi met plaintiff for the first time at the municipal hearing, and plaintiff's allegations of a police-department-wide conspiracy to

harass him because of his sexual orientation and the possibility he may disobey the Dunellen cross-dressing ordinance is nothing more than speculation, making summary judgment on this claim appropriate as well.

The judge dismissed counts five and six, deprivation of equal rights, equal protection, and due process, finding as to the § 1983 claim plaintiff did not plead, or present any evidence that would show the Dunellen Police had any policy, practice, or custom that infringed on his constitutional rights "as alleged at various points in his complaint and amended complaint," including selective enforcement which he raised for the first time in his amended complaint.

The judge noted as to claims under equal protection, plaintiff did not show evidence that would demonstrate a pattern of Cangialosi or the Dunellen Police Department to indicate plaintiff's summonses or towing was treating him any differently than other individuals and vehicles that were not compliant with the motor vehicle laws, and that the opposite was shown in that Torruella also received a summons for her unregistered K plates.

As to the Fourth Amendment claims regarding unlawful search and seizure, the judge had already dismissed those claims in count one because Cangialosi had or reasonably believed he had probable cause to issue the summonses and tow the Explorer, and plaintiff's new allegations in his

November 20 opposition of other unlawful searches prior to the date of the summonses were not supported by any evidence in the record.

The judge noted Cangialosi has qualified immunity as it was objectively reasonable that he believed plaintiff's vehicle bore fictitious plates and was not registered, and plaintiff's new allegations that police officers had been searching his Explorer in the days leading up to the summonses are mere speculation and unsupported by any factual evidence in the record. Further, an unregistered vehicle may be removed from a highway, even if parked, and there is no requirement in the statute the owner must be given notice. Plaintiff was able to recover his vehicle immediately on a showing of current registration and plates, and through due process he was able to explain why he had the Z plates on the car rather than the N plates during his municipal trial and later through his Law Division appeal, which resulted in all disputed charges being dropped.

42 U.S.C. § 1983 creates a federal cause of action against a person who, under color of law, deprives an individual of constitutional rights. Plemmons v. Blue Chip Ins. Servs., Inc., 387 N.J. Super. 551, 565 (App. Div. 2006). Under Monell, a municipality can be held liable for acts committed by its employees, "pursuant to a government policy or custom, that violate the Constitution." Besler v. Bd. of Educ. of West Windsor-Plainsboro Regional Sch. Dist., 201

N.J. 544, 564-65 (2010) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). The issue to be addressed is whether a municipality's "practice, custom, or policy . . . is the moving force that causes a violation of a constitutional right." Id. at 566-67.

Plaintiff did not demonstrate he "has been intentionally treated differently from others similarly situated." Plemmons, 387 N.J. Super. at 565-66 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Moreover, there is no evidence in the record to show the Dunellen Police Department had any practice, custom, or policy of depriving citizens of their constitutional rights under color of law in violation of § 1983. Plaintiff points out his vehicle was the only one, out of ten, that was towed, but there is nothing to infer it was done to discriminate against him either for his other lawsuit against a police officer, of which there is no evidence Cangialosi or anyone else even knew about it as it was in a different town, or because he was gay, of which there is also no evidence Cangialosi or anyone else at the Dunellen Police Department knew, let alone there was a policy or custom to do so. Rather, it can be inferred that plaintiff's vehicle was towed because of the fictitious plates and its apparently unregistered status.

The judge dismissed count seven of plaintiff's complaint and amended complaint because plaintiff did not properly plead by not specifying which of Cangialosi's statements in particular he was referring to as fraudulent, as well as because plaintiff did not present the court with evidence sufficient to make out a prima facie case for fraud, especially as to the fourth element of reasonable reliance by plaintiff, as plaintiff himself did not rely on the statements but rather the municipal court did. "Legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity, with the intention that the other party rely on it, and he does so rely to his damage." Dover Shopping Ctr., Inc. v. Cushman's Sons, Inc., 63 N.J. Super. 384, 391 (App. Div. 1960). There is no evidence in the record that Cangialosi knowingly made false statements, intending plaintiff to rely on them to plaintiff's detriment, and summary judgment was appropriate on this claim as well.

The trial judge dismissed the negligent hiring or negligent supervision claims in count eight in that the record did not demonstrate any facts or even an expert report that would tend to support a claim of negligent hiring or negligent supervision. "The tort of negligent hiring has as its constituent elements two fundamental requirements," DiCosala v. Kay, 91 N.J. 159, 173 (1982): (1) the employer knew or had reason to know of the particular unfitness, incompetence,

or dangerous attributes of the employee and could reasonably foresee they constituted a risk of harm to others, and (2) through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristic proximately caused the injury. Id. at 173-74. The employee conduct at issue "need not be within the scope of employment." Id. at 174.

Here, there is nothing in the record to reflect Cangialosi was unfit, incompetent, or dangerous, or that the Dunellen Police Department knew or had reason to know such a thing.

The trial judge dismissed count nine after finding plaintiff failed to proffer any evidence to satisfy requirements under Monell that a municipal entity may only be liable for an employee's alleged constitutional violation if it was due to police practice or custom, and because the Dunellen Police Department cannot be liable under N.J.S.A. 59:2-10 where its employee is not liable, which the judge found he was not. As discussed above as to counts five and six, the issue to be addressed is whether a municipality's "practice, custom, or policy . . . is the moving force that causes a violation of a constitutional right." Besler, 201 N.J. at 566-67, and there was no evidence of that here.

The trial judge also dismissed count ten, finding the claims duplicative, and rejecting any due process violations. We agree with the judge's finding that

28

plaintiff had an opportunity to be heard in court and challenge the summonses, to appeal the fictitious plates conviction to the Law Division, and further may not rely on allegations against the municipal prosecutor and judge to support a due process claim against defendants Cangialosi and the Dunellen Police Department.

As to plaintiff's conspiracy claim, the judge dismissed count eleven finding the record "completely devoid" of any evidence of a common plan shared by any of the individuals plaintiff described, and because plaintiff failed to make a prima facie showing of conspiracy to commit a tort, as well as that defendants were either immune to suit or the claims were barred for failure to file a notice of claim in compliance with the TCA.

A civil conspiracy in New Jersey is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Popular North Am. v. Gandi, 184 N.J. 161, 177 (2005) (quoting Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)). The "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give

a right of action.'" Id. at 177-78 (quoting Morgan, 268 N.J. Super. at 364) (quoting Bd. of Educ. v. Hoek, 38 N.J. 213, 238 (1962)).

Plaintiff argues a jury could find the CAD was "confusing and erroneous on purpose and [Cangialosi] was part of it." However, there is nothing in the record to indicate this, and further, the confusing CAD report is immaterial as the Z plates did not come up registered to any car, so there would have been no reason for Cangialosi to fabricate a story about K plates on plaintiff's car.

The trial judge dismissed count twelve, intentional infliction of emotional distress, as she found no evidence whatsoever that Cangialosi's actions rose to the level of outrageous conduct and plaintiff failed to provide the court with proof that Cangialosi acted for the purpose of causing plaintiff emotional distress so severe it could be expected to adversely affect his mental health.

"Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988). The act must have been intended "both to do the act and to produce emotional distress," or to act "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." Ibid.

Here, there is no evidence Cangialosi intended to cause plaintiff emotional distress, as he was on patrol issuing summonses to multiple vehicles for traffic violations, and it is undisputed he and plaintiff had never met before the municipal trial.

Although the judge permitted plaintiff to file an amended complaint, she found no recognized causes of action for any of the newly added counts. The judge found the destruction of evidence claim may refer to "fraudulent concealment" as defined in Rosenblit v. Zimmerman, 166 N.J. 391, 406 (2001), as plaintiff alleged defendants were withholding ALPR images but noted plaintiff failed to address that his repeated attempts to obtain the images via motions to compel were denied by the court and the documents themselves may be in possession of non-parties who were never subpoenaed. The judge also noted plaintiff provided the images based on representations during oral argument, so he had at one point had them. Also "retaliation" was not a recognized cause of action except under the NJLAD[7] and CEPA,[8] which, as employment actions, were clearly inapplicable.

---

[7] New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49.

[8] Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14.

The trial judge dismissed all claims for punitive damages as to the Dunellen Police Department because punitive damages are not available from municipalities, and as to Cangialosi, plaintiff did not satisfy his burden to establish that Cangialosi acted in a negligent or grossly negligent manner, let alone with wanton and willful disregard of plaintiff's rights.

As the trial judge noted, "[n]o punitive or exemplary damages shall be awarded against a public entity" under N.J.S.A. 59:9-2(c).  As to individuals, to warrant punitive damages under § 1983, a defendant may be liable if there is "a reckless or callous indifference to the constitutionally protected rights of the plaintiff, illwill or a desire to injure the plaintiff or if he manifests malice." Anastasio v. Planning Bd. of West Orange Tp., 209 N.J. Super. 499, 527 (App. Div. 1986).  As previously discussed, there is no indication of malice here.

Addressing plaintiff's cross-motion for summary judgment, the trial judge found plaintiff had not presented the court with sufficient grounds on which to grant the relief sought, even taking into consideration that he was pro se and put forth his best efforts.  The motion and supporting documentation did not meet the requirements of Rule 4:46-2, and the judge could not determine any factual or legal basis to grant summary judgment.

Plaintiff sought summary judgment on two grounds: (1) it was a fact that Z plates were displayed on the Explorer until he or someone else removed them sometime after 10:31 a.m. on October 13, 2014, and (2) by seizing property without probable cause, Cangialosi violated plaintiff's Fourth Amendment rights as well as his rights under the New Jersey Constitution, Article 1 paragraph 7. The first ground only serves to further support defendants' argument that plates not registered to any car were on plaintiff's vehicle, and there was evidence that Cangialosi had probable cause to tow the Explorer for fictitious plates.

Finally, as to plaintiff's assertions regarding the denial of his last discovery motion, generally we "apply an abuse of discretion standard to decisions made by our trial courts relating to matters of discovery." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). The trial judge did not reopen discovery because the trial date was set, both parties had filed for summary judgment, and plaintiff had not presented the court with any exceptional circumstances justifying a reopening of discovery as required under Rule 4:24-1(c). Based on our review of the record, we discern no abuse of the court's discretion.

After a careful review of the record de novo, we find no basis for reversing the decision. We find no mistakes of law, and we agree with the sound reasoning

33

of the trial court.  Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION