**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1164-22

LARRY NIKOLA and
MEMORIAL PROPERTIES,
LLC,

      Plaintiffs-Appellants/
Cross-Respondents,

v.

ALTICE USA, INC., ALTICE
USA NEWS, INC., a
division of ALTICE USA,
INC., d/b/a NJ NEWS 12, NJ
NEWS 12, WALTER KANE,
individually and as an
employee of ALTICE USA,
INC., HOLMDEL CEMETERY
COMPANY, and JEFFREY
ACKERSON,

      Defendants-Respondents,

and

FAY GIANARIS,

      Defendant,

and

ROBERT BOYCE,

     Defendant/Third-Party
     Plaintiff-Respondent/
     Cross-Appellant,

v.

MICHAEL BERARDI,

     Third-Party Defendant,

and

HOLMDEL CEMETERY
COMPANY and JEFFREY
ACKERSON,

     Third-Party Defendants-
     Cross-Respondents.

_____

Argued April 9, 2024 – Decided July 24, 2025

Before Judges Gooden Brown and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3119-19.

Fruqan Mouzon argued the cause for appellants/cross-respondents (Fox Rothschild, LLP, attorneys; Fruqan Mouzon and Daniel Cohen, of counsel and on the briefs).

Louis E. Granata argued the cause for respondent/cross-appellant Robert Boyce.

A-1164-22

Joseph Ross argued the cause for respondents/cross-respondents Holmdel Cemetery and Jeffrey Ackerson (Goldberg Segalla LLP, attorneys; John W. Meyer and Seth L. Laver, of counsel and on the brief).

Katherine M. Bolger (Davis Wright Tremaine LLP) of the New York bar, admitted pro hac vice, argued the cause for respondents Altice USA Inc., Altice USA News, Inc., d/b/a NJ News 12, NJ News 12, and Walter Kane (Robinson Miller LLC, attorneys; Katherine M. Bolger and Keith J. Miller, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, P.J.A.D.

This appeal and cross-appeal follow lengthy motion practice in the Law Division that ultimately resulted in the dismissal of all claims. Plaintiffs Memorial Properties, LLC (Memorial Properties or Memorial), a cemetery management company, and Larry Nikola, its manager, alleged that numerous defendants attempted to defame them. Defendants include Holmdel Cemetery Company (Holmdel, Holmdel Cemetery, or the Cemetery); Jeffrey Ackerson, its president; Robert Boyce, a former maintenance supervisor and cross-appellant in this action; NJ News 12; and Walter Kane, a reporter. An episode of Kane's program entitled "Kane in Your Corner" featured a segment alleging that plaintiffs and Holmdel engaged in "double-selling" interment spaces,

3

unbeknownst to the purchasers. Boyce appeared in the segment and claimed that numerous families had complained of this practice over the years.

As a result, plaintiffs filed a three-count complaint against defendants Altice USA News, Inc., a division of Altice USA, Inc., doing business as NJ News 12; Kane; and Boyce. In response, Boyce filed a third-party complaint against Holmdel and Ackerson for indemnification and contribution. Plaintiffs then amended their complaint to add Holmdel and Ackerson as direct defendants. Plaintiffs alleged defamation per se and tortious interference with economic interest against all parties, in addition to civil conspiracy, trespass, and conversion of property against Boyce, as well as breach of contract and civil conspiracy to commit fraud against Holmdel and Ackerson.

Ultimately, all of plaintiffs' and Boyce's claims were dismissed by way of motions to dismiss or summary judgment. Plaintiffs filed two motions for reconsideration that were both denied. On appeal, plaintiffs now challenge the denial of their reconsideration motions, as well as the underlying summary judgment dismissal of their claims. Boyce cross-appeals the denial of his motion for frivolous litigation sanctions against plaintiffs and the dismissal of his indemnification claim against Holmdel and Ackerson. For the reasons that follow, we affirm.

4

## I.

We glean these facts from the motion record.  Plaintiff Memorial Properties is a cemetery management company that contracts with New Jersey cemeteries, like Holmdel, to sell interment spaces, including graves, crypts, and mausoleums.  Plaintiff Larry Nikola is a manager at Memorial Properties.  Memorial Properties had a contract with defendant Holmdel Cemetery, whereby plaintiffs acted as agents to sell Holmdel's interment spaces, while Holmdel maintained the cemetery records and maps necessary to determine the availability of interment spaces prior to sale.  Defendant and cross-appellant Robert Boyce worked for Holmdel as a maintenance supervisor from September 2005 until August 2018.

Defendant Altice USA News, Inc. (Altice News), is a division of defendant Altice USA, Inc., a cable operator that offers cable television, internet, and telephone services, and is doing business in this State as NJ News 12.  Defendant Walter Kane is a reporter on NJ News 12's television channel and has hosted "Kane in Your Corner," an investigative reporting series, for the past seventeen years.  Altice News and Kane will be collectively referred to as the media defendants.

A-1164-22

In March 2019, as part of the "Kane in Your Corner" series, NJ News 12 aired an investigative report on consumer complaints that included interviews of multiple individuals and an accompanying written article. The complaints alleged that Holmdel and Memorial had "double-sold" gravesite locations to multiple individuals without their knowledge, and that some purchasers only found out years later after their loved one had died. As part of the segment, Kane interviewed a patron, Fay Gianaris.[1]

According to Gianaris, she "purchased a final resting place for her parents in 2012, and ha[d] the contract to prove it" but, upon her father's death in 2018, "was infuriated to find someone else buried" at his grave. Gianaris told the media defendants that the cemetery had dug a new grave in another location on a steep hill that she feared her elderly mother could not climb. According to the report, when Gianaris complained, "the cemetery's sales agent produced a version of the contract that was altered" and included "a handwritten note[] that read 'authorized by daughter, Fay.'" However, during her interview, Gianaris reportedly insisted that plaintiffs "never spoke to" or "contacted" her, and "[t]hey never sent [her] a new contract." The "Kane in Your Corner" report also

_____

[1] Gianaris was a named defendant in the lawsuit but was dismissed from the case by motion.

claimed that the media defendants "found at least six cases of families complaining that they did not get [the] locations they paid for."

At the time of the "Kane in Your Corner" report, Boyce no longer worked for Holmdel. However, during his interview for the segment, he reportedly commented about the alleged double selling, stating, "There's probably about [fifteen] or [twenty instances] over there that I know of." In fact, Boyce had previously voiced his concerns about the Cemetery's activities. In 2015, he had filed a complaint with the New Jersey Cemetery Board (Board), but the Board did not take action. Instead, in response to Boyce's complaint, the Board had cited "old maps" as the cause of the problem and found that all related issues had been rectified and would not reoccur. Nonetheless, according to the media defendants' report, several families, including Gianaris's, reported issues after Boyce's 2015 Board complaint.

The media defendants' report also stated that Holmdel's administrator, Fran Chludzinski, had submitted a resignation letter in which she wrote that she and Boyce "'were uncovering years of hidden problems,' which she blamed on Memorial Properties." However, Chludzinski never resigned from her position and reportedly told Kane in an interview that "she no longer believe[d] what she wrote."

Nikola also provided a written statement to the media defendants that was referenced in the report. According to Nikola, "Memorial Properties did not and does not maintain the Cemetery's maps or grave sale records nor does it locate graves for interments. Those duties are borne by the Cemetery Administration."

The media defendants' report concluded by stating that "the New Jersey [A]ttorney [G]eneral is now giving Holmdel Cemetery and Memorial Properties a second look. 'The cemetery board has received additional complaints against Holmdel Cemetery, [and] the matter is under review,' [said] spokesperson Lisa Coryell." The report ended by calling the statement "out of character since the Attorney General's Office rarely confirms or denies investigations."

On September 3, 2019, plaintiffs filed a three-count complaint against the media defendants and Boyce. The complaint alleged defamation per se and tortious interference with economic interests against all defendants, and civil conspiracy, trespass, and conversion of property against Boyce. The complaint alleged that in addition to speaking to the press and filing a claim with the Board, Boyce had threatened Michael Berardi,[2] a Memorial employee, in his office; made false accusations of wrongdoing to "persuade local funeral directors, vault

_____

[2] Berardi was a third-party defendant in Boyce's third-party complaint but is not a party in this appeal.

dealers, clergy and contractors to steer prospective purchasers and service providers away from Holmdel"; and had "trespassed" into Memorial's office, "where he retrieved and made [photocopies] of genuine [c]emetery records" to "alter[] the copies" and "fabricate documents" to support his false accusations. According to the complaint, Boyce's disparagement campaign was motivated by "his envy over the success of Memorial Properties and its employees in conducting [the] Cemetery's sales," and his desire to "do that job as well as maintaining the grounds." The complaint asserted that the campaign resulted in a steady decline in cemetery space sales "starting in 2010."

On October 15, 2019, Boyce filed an answer denying plaintiffs' claims and asserting an affirmative defense of frivolous litigation. He also filed a third-party complaint against Holmdel and Ackerson seeking indemnification and contribution.

On October 28, 2019, the media defendants filed a motion to dismiss for failure to state a claim on the ground that plaintiffs failed to plead actual malice. On January 10, 2020, Judge Mara Zazzali-Hogan entered an order dismissing plaintiffs' claims against the media defendants without prejudice. In an oral decision, the judge agreed that plaintiffs failed to plead that "defendants acted with actual malice in publishing the statements at issue in the report." The judge

also found that plaintiffs' tortious interference claim "based on the same speech underlying the defamation claim" also failed "for the independent reason" that plaintiffs failed to allege that "defendant[s'] publication of the report maliciously interfered with plaintiff[s'] economic interests" or that plaintiffs suffered damages since the sales decline started in 2010, but the report did not air until 2019.

On September 11, 2020, the judge granted plaintiffs' motion to amend the complaint. The amended complaint included the original three counts and added Holmdel and Ackerson as defendants in two new counts. The new counts alleged breach of contract, civil conspiracy to commit fraud, defamation, and tortious interference with economic interest, as well as a claim for punitive damages against all defendants.

On May 14, 2021, Judge Zazzali-Hogan entered an order granting Holmdel's and Ackerson's motions to dismiss plaintiffs' claims for breach of contract and punitive damages, but denied without prejudice the motion to dismiss plaintiffs' claims for tortious interference, defamation, and civil conspiracy. In a supporting written opinion, the judge determined plaintiffs failed to allege a breach of the sales management agreement between Holmdel and Memorial's predecessor company to support a breach of contract claim, and

10

failed to "sufficiently plead facts to claim punitive damages." On October 22, 2021, plaintiffs' motion for reconsideration was denied.

On October 29, 2021, Judge Owen C. McCarthy entered an order and oral opinion granting Holmdel's and Ackerson's motions for summary judgment on plaintiffs' remaining claims of tortious interference, defamation, and civil conspiracy, as well as Boyce's claim for contribution. The judge denied summary judgment on Boyce's indemnification claim, stating it was "premature until the scope and basis for [the] liability of Boyce is proper[ly] addressed by a fact finder." On December 7, 2021, the judge denied plaintiffs' motion to file a second amended complaint.

On January 31, 2022, in an oral decision, Judge McCarthy reaffirmed the summary judgment dismissal of the tortious interference, defamation, and civil conspiracy claims against Holmdel and Ackerson, but found that "the breach of the implied covenant of good faith and fair dealing" identified in the dismissed breach of contract claim[3] in the amended complaint "remain[ed] an active claim." The judge explained that the "cause of action for the breach of the implied covenant of good faith is a separate and distinct legal theory from the

---

[3] The judge noted that although Judge Zazzali-Hogan had dismissed the breach of contract claim "without prejudice," plaintiffs had since "abandoned" the claim.

breach of contract, which was not addressed on the merits during either of the prior dispositive motions by Holmdel Cemetery and Ackerson."

In the same January 31, 2022 oral decision, Judge McCarthy addressed Boyce's previously filed motion for summary judgment. The judge granted the motion as to all counts except defamation. In support, the judge found no legal authority or evidentiary basis to sustain plaintiffs' claims for trespass, conversion, or tortious interference against Boyce. Further, because summary judgment was previously granted to Ackerson and Holmdel Cemetery, the judge found no basis for a civil conspiracy claim in the absence of a "co-conspirator." Although the oral decision was placed on the record on January 31, 2022, a memorializing order was entered on January 21, 2022.

Subsequently, Holmdel and Ackerson moved for summary judgment on plaintiffs' last claim remaining against them, the breach of the implied covenant of good faith and fair dealing. In an April 8, 2022 order, Judge McCarthy granted the motion. In an accompanying oral decision, the judge explained:

> The [c]ourt finds that . . . plaintiff[s have] been unable to demonstrate a prima facie case of a breach of the implied covenant of good faith and fair dealing. As noted throughout the record today, and during prior hearings, . . . plaintiff[s] remain[] in contract with . . . [Holmdel].

> That sales agreement has never been violated. While there[ have] been multiple attempts to talk about defamation and other claims that may exist against . . . Boyce, I do not think the purpose of the implied covenant of good faith is a catch-all, almost kitchen sink approach to encompass all claims . . . .

The judge also pointed out that plaintiffs "admitted today, and [during] other prior arguments, that there are no economic loss[es]" and plaintiffs "cannot quantify with any specificity or the required certainty[] what sales have been lost . . . as a result of the breach of the implied covenant of good faith and fair dealing."

Plaintiffs moved for partial reconsideration of the January 10, 2020 order, dismissing the media defendants, and reconsideration of the April 8, 2022 order, dismissing plaintiffs' breach of the implied covenant of good faith and fair dealing claim against Holmdel and Ackerson. Boyce cross-moved for partial reconsideration of the January 21, 2022 order, denying dismissal of the last remaining claim against him, the defamation claim. Judge Zazzali-Hogan handled the motion for reconsideration of the January 10, 2020 order and Judge McCarthy handled the remaining motions. In separate oral opinions placed on the record on October 7, 2022, each judge denied plaintiffs' respective motions for reconsideration. Judge McCarthy further denied plaintiffs' motion to amend the complaint to include a claim for false light, finding that the false light claim

13

essentially mirrored the defamation claim, which two judges had already dismissed by way of motions.

As to Boyce, Judge McCarthy granted his motion for partial reconsideration and dismissed with prejudice the remaining defamation claim. Because the judge dismissed the last claim against Boyce and Boyce's claim for indemnification against Holmdel and Ackerson was a third-party claim, the judge dismissed as "moot" Holmdel's and Ackerson's "motion on short notice" with respect to Boyce's indemnification claim.

Boyce moved for sanctions against plaintiffs pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59, which Judge McCarthy denied in an order and oral decision on November 3, 2022. Viewing the case "in light of the very restrictive lens through which courts must view requests for [sanctions] under the frivolous litigation rule and statute," the judge found that there could have been "a reasonable good-faith belief in the merit of the cause of action." During the same hearing, Judge McCarthy clarified that Holmdel's and Ackerson's motion with respect to Boyce's indemnification claim, which had briefly been discussed during the October 7, 2022 hearing, was "mark[ed] . . . as moot" based upon "the prior . . . dismissal of all claims."

14

Plaintiffs appealed, and Boyce cross-appealed. On appeal, plaintiffs raise the following points for our consideration:

POINT I. [THE] TRIAL COURT COMMITTED REVERSIBLE ERROR BY APPLYING [THE] "ACTUAL MALICE" STANDARD

A. Media Defendants Made False and Defamatory Statements

B. Media Defendants Published the False Statements

C. The Trial Court Erroneously Required [Plaintiffs] to Prove "Actual Malice"

POINT II. SUMMARY DISMISSAL OF THE MEDIA DEFENDANTS REMAIN[S] INAPPROPRIATE EVEN IF APPLYING THE "ACTUAL MALICE" STANDARD

A. Certain Defamatory Statements Were Made with Knowledge of Falsity

B. Defamatory Statements Were Made with a Reckless Disregard of the Truth

C. Media Defendants' Purposeful Avoidance of the Truth

POINT III. [THE] TRIAL COURT ERRONEOUSLY DISMISSED [PLAINTIFFS'] CLAIM FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

A. [Plaintiffs] Sufficiently Allege[d] Damages

POINT IV. BOYCE SHOULD NOT HAVE BEEN DISMISSED FROM THE CASE ON SUMMARY JUDGMENT

Boyce raises the following points for our consideration on cross-appeal:

15                                                    A-1164-22

POINT [I]. [PLAINTIFFS] FILED FRIVOLOUS CLAIMS AGAINST [BOYCE] AND SHOULD HAVE BEEN SANCTIONED FOR FAILING TO PROVIDE ANY SUFFICIENT EVIDENTIARY SUPPORT FOR ANY CLAIMS AFTER HAVING THE OPPORTUNITY FOR FURTHER INVESTIGATION, PURSUANT TO [RULE] 1:4-8(a)(3)

POINT [II]. [BOYCE'S] THIRD[-]PARTY COMPLAINT AGAINST THIRD[-]PARTY DEFENDANT[S], HOLMDEL CEMETERY AND JEFFREY ACKERSON[,] SHOULD BE REINSTATED AND RETURNED TO THE TRIAL COURT FOR DISPOSITION

II.

Our analysis begins with some established principles regarding our standard of review. We review a Rule 4:6-2(e) motion to dismiss for "failure to state a claim upon which relief can be granted" de novo, and we "owe[] no deference to the trial court's legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). "The standard traditionally utilized by courts to determine whether to dismiss a pleading . . . is a generous one." Green v. Morgan Props., 215 N.J. 431, 451 (2013). Accordingly, "[a] plaintiff is entitled to a liberal interpretation and given the benefit of all favorable inferences that reasonably may be drawn." State, Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 478 (App. Div. 2006). As a result, motions to dismiss "should be granted in only the rarest of instances." Printing Mart-Morristown v. Sharp

Elecs. Corp., 116 N.J. 739, 772 (1989); see also Smith v. SBC Commc'ns Inc., 178 N.J. 265, 282 (2004) ("The motion to dismiss should be granted only in rare instances and ordinarily without prejudice. As such, '[i]f a generous reading of the allegations merely suggests a cause of action, the complaint will withstand the motion.'" (alteration in original) (quoting F.G. v. MacDonell, 150 N.J. 550, 556 (1997))).

In evaluating a Rule 4:6-2(e) motion, "our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Green, 215 N.J. at 451 (quoting Printing Mart, 116 N.J. at 746). "At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Printing Mart, 116 N.J. at 746. Rather, "the test for determining the adequacy of a pleading[ is] whether a cause of action is 'suggested' by the facts." Ibid. (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). To that end, courts must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim" and grant the "opportunity . . . to amend if necessary." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). Notwithstanding this liberality, "the essential facts supporting [the] cause of

17

action must be presented in order for the claim to survive," and "conclusory allegations are insufficient in that regard." Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012) (citing Printing Mart, 116 N.J. at 768).

On the other hand, we review a trial court's decision on a motion for reconsideration under an abuse of discretion standard. Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

A reconsideration motion under Rule 4:49-2 "requires a showing that the challenged order was the result of a 'palpably incorrect or irrational' analysis or of the judge's failure to 'consider' or 'appreciate' competent and probative evidence." Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)). "Where the order sought to be reconsidered is interlocutory, . . . Rule 4:42-2 governs the motion." JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022). "Reconsideration under this rule offers a 'far

more liberal approach' than <u>Rule</u> 4:49-2, governing reconsideration of a final order." <u>Ibid.</u> (quoting <u>Lawson</u>, 468 N.J. Super. at 134).

Indeed, "<u>Rule</u> 4:42-2 declares that interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" <u>Lawson</u>, 468 N.J. Super. at 134 (quoting <u>R.</u> 4:42-2(b)); <u>see also</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 3 on <u>R.</u> 4:42-2 (2025) ("[A]n order adjudicating less than all the claims is subject to revision in the interests of justice at any time before entry of final judgment.").

For summary judgment motions, "we review the trial court's grant of summary judgment de novo under the same standard as the trial court." <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. <u>R.</u> 4:46-2(c); <u>see</u> <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995). On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. <u>R.</u> 4:46-2(c); <u>see</u> <u>Brill</u>, 142 N.J. at 540.
>
> [<u>Steinberg v. Sahara Sam's Oasis, LLC</u>, 226 N.J. 344, 366 (2016) (citation reformatted).]

Where there is no material fact in dispute, "we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), overruled on other grounds by Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558 (2012)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

III.

Turning to the substantive principles pertinent to this appeal, the crux of plaintiffs' arguments in Point I challenges the standard applied to the defamation claim against the media defendants. Plaintiffs contend that the judge erred in applying the actual malice standard and requiring plaintiffs to prove actual malice. Alternatively, plaintiffs posit that even if the actual malice standard applies, the judge still erred in dismissing the defamation claim against the media defendants. The media defendants respond that the judge correctly applied the actual malice standard because the "Kane in Your Corner" report involved matters of legitimate public interest. Critically, during the October 7, 2022 reconsideration hearing before Judge Zazzali-Hogan, plaintiffs conceded

20

that the actual malice standard applied, stating that the report involved "a matter of public concern."

"Defamation imposes liability for publication of false statements that injure the reputation of another." Printing Mart, 116 N.J. at 765. "The elements of a defamation claim in New Jersey are (1) 'the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" Hyman v. Rosenbaum Yeshiva of N. Jersey, 258 N.J. 208, 236 (2024) (Patterson, J., concurring) (quoting Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 585 (2009)).

In defamation cases, an "actual-malice standard for liability purposes" applies "when the alleged defamatory statement concerns a public figure or a public official or involves a matter of public concern." W.J.A. v. D.A., 210 N.J. 229, 244 (2012) (quoting Senna v. Florimont, 196 N.J. 469, 496 (2008)). "The actual-malice standard tolerates more falsehood and harm to reputation than the negligence standard in order to shield highly valued speech from ruinous lawsuits." Senna, 196 N.J. at 474. "When published by a media or media-related defendant, a news story concerning public health and safety, a highly regulated industry, or allegations of criminal or consumer fraud or a substantial regulatory

21

violation will, by definition, involve a matter of public interest or concern." W.J.A., 210 N.J. at 244 (quoting Senna, 196 N.J. at 496-97).

We are satisfied that the judge correctly applied the actual malice standard in this case. Plaintiffs' defamation claims involved consumer fraud and are therefore a matter of public interest and concern. "[C]onsumer fraud involves a pattern of repetitive conduct . . . ." Turf Lawnmower Repair v. Bergen Record Corp., 139 N.J. 392, 416 (1995). "[T]he business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer, and thus most clearly and directly involve a matter of legitimate public concern." Ibid.

The "Kane in Your Corner" report featured such egregious business practices. The report alleged that plaintiffs were "double-selling" grave plots to multiple individuals without their knowledge, with families belatedly discovering that someone else was buried in the plot they had purchased. These allegations undoubtedly constitute repetitive conduct standing outside the norms of reasonable business practices. See ibid. As such, the defamation claims are a matter of public concern, and the actual malice standard applies. W.J.A., 210 N.J. at 244.

To survive a motion to dismiss, plaintiffs must allege sufficient facts in the pleadings, which, if proven, would constitute a valid cause of action. Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (App. Div. 2001). While a motion to dismiss must be evaluated "in the light most favorable to plaintiff[s]," Nostrame v. Santiago, 213 N.J. 109, 113 (2013), mere conclusions and an intention to rely on discovery are inadequate, Glass v. Suburban Restoration Co., 317 N.J. Super. 574, 582 (App. Div. 1998).

"To satisfy the actual-malice standard, a plaintiff must show by clear and convincing evidence that the publisher either knew that the statement was false or published with reckless disregard for the truth." Neuwirth v. State, 476 N.J. Super. 377, 391 (App. Div. 2023) (quoting Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 165 (1999)). "In order to demonstrate the reckless disregard element, [a] plaintiff must show that the statements were published with a 'high degree of awareness of their probable falsity,' or with 'serious doubts as to the truth of [the] publication.'" DeAngelis v. Hill, 180 N.J. 1, 13 (2004) (second alteration in original) (citation omitted) (first quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964); and then quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)). "Provided that a reporter or editor does not publish a false and defamatory statement with actual malice[,] . . . the erroneous statement contained in an

23

article touching on a matter of public interest is not actionable." Durando v. Nutley Sun, 209 N.J. 235, 239 (2012).

Here, plaintiffs cannot satisfy the actual malice standard. Plaintiffs failed to plead any facts indicating that the media defendants published the report "with knowledge of its falsity or with reckless disregard for the truth," Verna v. Links at Valleybrook Neighborhood Ass'n, Inc., 371 N.J. Super. 77, 95 (App. Div. 2004), or that the media defendants had any subjective awareness or belief that the report was false, see Neuwirth, 476 N.J. Super. at 392 (collecting cases). Instead, plaintiffs' complaint is comprised solely of conclusory allegations that cannot withstand a motion to dismiss.

Plaintiffs also argue that the media defendants "purposeful[ly] avoided" reviewing Holmdel's records to verify the authenticity of grave sale contracts and dispel any allegation of double-selling. According to plaintiffs' complaint, the media defendants' failure to have plaintiffs verify documents resulted in them presenting "false claims and misleading documents to the public." We are unpersuaded. "Mere failure to investigate all sources does not prove actual malice." Lynch, 161 N.J. at 172. Thus, we conclude that the judge properly dismissed the claims against the media defendants.

A-1164-22

We are also convinced that the judge did not abuse her discretion in denying plaintiffs' motion for reconsideration. In denying the motion, the judge reiterated that a "bare conclusory assertion that the [media] defendants knew and/or reasonably should have known that a statement was false or that any essential facts that the [c]ourt may find lacking can be dredged in discovery is insufficient to survive a motion to dismiss." Critically, plaintiffs' "counsel conceded that there is nothing in the pleadings that specifically states or pleads any facts that go to the issue of actual malice." The judge also commented on several facts that undermined plaintiffs' argument that the media defendants recklessly disregarded the truth, including Boyce's complaint to the Board and Gianaris's sales contract.

Additionally, we reject plaintiffs' contention that the media defendants "intentionally took steps to avoid or outright . . . refuse to conduct an investigation that could[ have] uncovered contradictory information." As the judge found, the media defendants conducted several interviews; reviewed Boyce's Board complaint, the Board's response, and Gianaris's sales contract; and contacted plaintiffs for comment about the allegations. We are satisfied

A-1164-22

there is adequate factual support in the record and good cause to support the judge's ruling denying reconsideration.[4]

In Point III, plaintiffs argue that the judge erroneously dismissed their claim for breach of the implied covenant of good faith and fair dealing against Holmdel and Ackerson. They assert that Holmdel's actions "correlated with a substantial decline in sales beginning in 2010" and "a myriad of losses that include both lost sales and damage to business reputation." (Emphasis omitted). Holmdel and Ackerson counter that plaintiffs failed to provide any proof of damages.

"The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224-25 (2005) (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)). "[I]t is critical to note that, '[i]n the first instance, the implied covenant of good faith and fair dealing is precisely what its name allows: it is an implied

_____

[4] Although the judge cited Rule 4:49-2, governing motions to reconsider final orders, instead of Rule 4:42-2, governing reconsideration of interlocutory orders, the judge nonetheless correctly denied plaintiffs' motion for reconsideration.

covenant.'" Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577 (2011) (alteration in original) (quoting Kalogeras v. 239 Broad Ave., L.L.C., 202 N.J. 349, 366 (2010)). As such, "a party can violate the implied covenant of good faith and fair dealing without violating an express term of a contract." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 422-23 (1997).

Here, plaintiffs failed to identify any actions Holmdel allegedly took to support its breach of the implied covenant claim. They assert that Holmdel engaged in "undermining" tactics in an attempt to terminate the sales contract so that Holmdel could "either take over sales on its own and collect the commissions or recruit a replacement sales agent on much better terms." However, despite extensive discovery and motion practice, plaintiffs fail to provide any evidence of Holmdel's bad motives. "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001). "Bad motive or intention is essential, . . . as . . . '[c]ontract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper.'" Id. at 251-52 (alteration in original) (quoting Original

27

Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 280 (7th Cir. 1992)).

As such, plaintiffs were required to prove that Holmdel and Ackerson acted with bad faith and deprived plaintiffs of rights or benefits under the contract. Stated differently, plaintiffs were required to prove that Holmdel and Ackerson "destroyed [plaintiffs'] reasonable expectations and right to receive the fruits of the contract." Sons of Thunder, 148 N.J. at 425. Plaintiffs have failed to meet this burden. In fact, as the judge found, plaintiffs remain under contract with Holmdel and have admitted there are no economic losses. The parties' sales agreement has never been violated, nor have plaintiffs shown that they suffered a deprivation of any contractual benefit. Because plaintiffs failed to put forth any facts supporting a breach of the implied covenant of good faith and fair dealing, the judge properly dismissed the claim.

Turning to the denial of plaintiffs' motion for reconsideration, the judge found plaintiffs failed to demonstrate a mistake by the court, a change in circumstances, or the court's misappreciation of what was previously argued. As a result, the judge found no reason to vacate the April 8, 2022 order because plaintiffs failed to articulate damages for any of their alleged causes of action and proffered no evidence to support financial harm to plaintiffs. We agree that

the judge correctly denied plaintiffs' motion to reconsider the dismissal of the claims against Holmdel and Ackerson and see no basis to intervene.

Finally, in Point IV, plaintiffs argue that the judge erroneously granted Boyce's motion for reconsideration and erroneously granted Boyce summary judgment dismissal of the defamation claim. They assert that Boyce made numerous false statements, which plaintiffs characterize as "by definition, defamatory." They identify the statements as follows:

> Stated, on local television, that there were [fifteen to twenty] [inter]ment spaces at Holmdel Cemetery that were <u>intentionally</u> double-sold;
>
> Opined that Memorial was motivated by greed to commit fraud on vulnerable families at the wors[t] time of their lives;
>
> Posted on his wife's Facebook page that he "witnessed first-hand the deceptive sales practices of Memorial Properties"; and
>
> Regularly disparaged Memorial to Cemetery lot owners, visitors, and funeral directors in an attempt to discourage further patronage.

Citing <u>Carey v. Piphus</u>, 435 U.S. 247, 262 n.18 (1978), and <u>Biondi v. Nassimos</u>, 300 N.J. Super. 148, 154 (App. Div. 1997), plaintiffs posit that "Boyce's purposeful statements concerning [plaintiffs'] business likely rise[] to the level of defamation per se" because they relate to plaintiffs' business practice

and are false. (Italicization omitted). Although plaintiffs maintain that they "intended to prove such falsity at trial," they do not specify what damages flowed from the statements. Boyce counters that plaintiffs presented no evidentiary support for their defamation claim, despite "two years of opportunities for further investigation [and] discovery."

In Carey, the Supreme Court described the "essence of slander per se" as "the publication by spoken words of false statements imputing to a person a . . . matter affecting adversely a person's fitness for trade, business, or profession." 435 U.S. at 262 n.18 (italicization omitted). In Biondi, we further explained that "[i]f a defamatory statement constitutes slander per se, a plaintiff may establish a cause of action not only without proving 'special damages,' that is, damages of a pecuniary nature, but without proving any form of actual damage to reputation." 300 N.J. Super. at 154 (italicization omitted) (citing Ward v. Zelikovsky, 136 N.J. 516, 540-41 (1994)). "This is sometimes referred to as the 'presumed damages' doctrine." Ibid. (citing Sisler v. Gannet Co., 104 N.J. 256, 281 (1986)).

In Biondi, we also cautioned, however, that although slander per se remains part of New Jersey defamation law, "the [Supreme] Court's characterization of the doctrine as 'a relic from tort law's previous age' and its

conclusion that 'the trend should be toward elimination . . . of the per se categories[]' suggests that [trial] courts should invoke the slander per se doctrine only in cases where it clearly applies." Id. at 155-56 (omission in original) (italicization omitted) (citation omitted) (quoting Ward, 136 N.J. at 541).

Applying these principles, we agree with the judge that, in this case, plaintiffs cannot rely solely on the doctrine of presumed damages without meeting the actual malice standard. In W.J.A., our Supreme Court summarized the United States Supreme Court jurisprudence regarding when presumed damages may apply in a defamation case as follows:

> In New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the United States Supreme Court declared that the First Amendment to the United States Constitution prohibits a public official from recovering damages for defamation related to his [or her] official position, in the absence of actual malice on the part of the publisher of the defamatory statement. Subsequently, in Gertz v. Robert Welch, Inc., the Supreme Court addressed the doctrine of presumed damages, denominating it an "oddity of tort law." 418 U.S. 323, 349 (1974). In Gertz, the Court declared presumed damages to be inconsistent with First Amendment values, unless the actual malice standard of New York Times Co. is satisfied. Ibid. A few years later, in Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 760-61 (1985), the Court modulated its ruling in Gertz and concluded that the First Amendment principles that informed Gertz do not restrict the right of the states to award presumed damages in cases involving private plaintiffs commenting on private matters.

31

[W.J.A., 210 N.J. at 241-42 (citations reformatted).]

The Court also reiterated that "presumed damages continue to play a role in our defamation jurisprudence in private plaintiff cases that do not involve matters of public concern" and explained that "[w]here a plaintiff does not proffer evidence of actual damage to reputation, the doctrine of presumed damages permits him [or her] to survive a motion for summary judgment and to obtain nominal damages, thus vindicating his [or her] good name." Id. at 233. But where, as here, the case involves a matter of public concern, actual damages must be articulated. Indeed, in public concern cases, "a plaintiff asserting a defamation claim cannot rely on the doctrine of presumed damages absent a finding that the defendant published the statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Rocci v. Ecole Secondaire Macdonald-Cartier, 165 N.J. 149, 156 (2000) (quoting N.Y. Times Co., 376 U.S. at 279-80). Because plaintiffs have failed to articulate damages, they cannot survive a motion for summary judgment, and the judge correctly granted Boyce's motion.

We add that even if plaintiffs articulated damages, summary judgment was still proper because plaintiffs failed to show that a genuine issue of material fact existed. "[O]nce the moving party presents sufficient evidence in support of the

[summary judgment] motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (last alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)). "'Competent opposition requires "competent evidential material" beyond mere "speculation" and "fanciful arguments."'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005); accord Hoffman, 404 N.J. Super. at 425-26.

Here, after extensive discovery and motion practice, plaintiffs have failed to show a genuine issue of material fact as to the defamation claim against Boyce. Despite a voluminous record, plaintiffs' argument relies entirely on conclusory allegations, offering no concrete evidence ascertained from any of the numerous certifications and depositions that were conducted over the lengthy course of this case. "[B]are conclusions in the pleadings[,] without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999) (quoting U.S. Pipe & Foundry Co. v. Am. Arb. Ass'n,

33

67 N.J. Super. 384, 399-400 (App. Div. 1961)).  We therefore affirm the judge's ruling granting reconsideration and granting summary judgment to Boyce on the defamation claim.

IV.

We now turn to Boyce's cross-appeal.  First, Boyce argues that plaintiffs' claims against him amounted to frivolous litigation and, as such, plaintiffs should have been sanctioned, as they produced no evidentiary support for any of their claims against him.

We review a trial judge's decision on a motion for frivolous litigation sanctions pursuant to Rule 1:4-8 under an abuse of discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011).  Under that standard, reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

Rule 1:4-8 "is designed to ensure that attorneys do not initiate or pursue litigation that is frivolous." LoBiondo v. Schwartz, 199 N.J. 62, 98 (2009); see also McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 560 (1993) (holding that pursuant to N.J.S.A. 2A:15-59.1, a prevailing party may also move

34

for sanctions against a party who has filed a frivolous pleading, defined similarly to Rule 1:4-8(a)(1) to (2)).  The imposition of sanctions, which can include reasonable attorney's fees, is one mechanism under the rule intended to deter frivolous litigation.  LoBiondo, 199 N.J. at 98-99.

"The sanctions for frivolous litigation apply when an attorney . . . has violated Rule 1:4-8 by presenting papers for an 'improper purpose' or asserting claims or defenses that lack the legal or evidential support" that the rule requires.  State v. Franklin Sav. Acct. No. 2067, 389 N.J. Super. 272, 281 (App. Div. 2006) (citing R. 1:4-8(a), (b)(1)(i) to (ii)).  "For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'"  United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009) (internal quotation marks omitted) (first quoting R. 1:4-8; and then quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)).

In a November 3, 2022 oral decision, Judge McCarthy denied Boyce's motion for sanctions.  Citing United Hearts, 407 N.J. Super. at 390, the judge astutely explained that "New Jersey courts restrictively interpret what is

frivolous in order to avoid limiting access to our court system." The judge

continued:

> Attorney's fees and sanctions . . . should not be awarded if a plaintiff had a reasonable and good-faith belief to believe in the merits of a cause of action. That was also noted by the Appellate Division . . . in S & R Associates v. Lynn Realty Corp., 338 N.J. Super. 350, 364 (App. Div. 2001), as well as Arrow Manufacturing Co. v. West New York, 321 N.J. Super. 596, 600 (App. Div. 1999)[, and] In re Estate of Ehrlich, 427 N.J. Super. 64, 77 (App. Div. 2012).
>
> Here, and in light of the very restrictive lens through which courts must view requests for counsel fees under the frivolous litigation rule and statute, the [c]ourt finds that the movant has not satisfied that burden. The [c]ourt does find that there can be, when viewing this under the prism, as suggested by the Supreme Court and the Appellate Division, that there was a reasonable good-faith belief in the merit of the cause of action. The fact that summary judgment ultimately was granted following the conclusion of discovery does not limit that fact.
>
> [(Citations reformatted.)]

We discern no abuse of discretion in the judge's denial of Boyce's motion

for sanctions. The record supports the judge's finding that plaintiffs had a

colorable basis for their causes of action against Boyce based on his statements

to the media defendants and the other documentary evidence. We therefore

agree that Boyce has failed to satisfy the high burden required to impose sanctions.

Finally, Boyce argues that the judge erred in dismissing his third-party indemnification claim against Holmdel and Ackerson because plaintiffs' claims against Boyce arose from his employment with Holmdel.

The judge dismissed Boyce's indemnification claim as moot because all claims against Boyce had been dismissed. We review a decision to dismiss a matter on mootness grounds de novo. Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017). "Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Id. at 291 (quoting Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010)). "[F]or reasons of judicial economy and restraint, courts will not decide cases in which the issue is hypothetical, [or] a judgment cannot grant effective relief[.]" Ibid. (alterations in original) (quoting Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993)).

In an October 29, 2021 hearing, the judge denied Holmdel's and Ackerson's motions for summary judgment on Boyce's indemnification claim, explaining:

The amended complaint asserts a broad array of negligent, tortious and unlawful conduct by . . . Boyce, including conduct that predated the conclusion of his employment relationship with Holmdel Cemetery on August 1, 2018.

To the extent that tortious, negligent and/or unlawful conduct occurred while Boyce was employed by Holmdel, this may provide a basis for indemnification. The timing and scope of the negligent, tortious and unlawful conduct of Boyce may trigger indemnification by his former employer Holmdel Cemetery, and this can be addressed through detailed jury interrogatories on the verdict sheet as to the timing of the negligent and/or unlawful conduct.

However, the request for summary judgment on the issue of indemnification is premature until the scope and basis for [the] liability of Boyce is proper[ly] addressed by a fact finder.

On January 21, 2022, Judge McCarthy stated on the record that the issues of vicarious liability and indemnification remained active in the case. On October 7, 2022, Judge McCarthy dismissed plaintiffs' defamation claim against Boyce, which was the last remaining claim against him. Because Boyce was granted summary judgment on his last claim, and because his claim for indemnification against Holmdel and Ackerson was a third-party claim, the

judge further dismissed as moot a motion filed by Holmdel and Ackerson seeking dismissal of Boyce's indemnification claim.[5]

Common-law indemnification is not limited to the costs of judgments or damages. "A common-law indemnitee, forced to defend claims for which its liability is only vicarious, is entitled not only to the cost of any judgment or reasonable settlement, but also to costs of defense occasioned by the

---

[5] Part of Boyce's argument on appeal is that the judge did not address his indemnification claim but dismissed the claim as "[s]ettled by conference with judge" with a disposition date of October 11, 2022. The motion filed on short notice by Holmdel and Ackerson to dismiss the indemnification claim does not appear in the record or in any of the parties' appendices. In Judge McCarthy's oral decision, he stated, "I know there was a motion on short notice filed by [Holmdel and Ackerson's attorneys]. But in light of the fact summary judgment has been granted to . . . Boyce, his case was only a third[-]party claim against you. With the case against . . . Boyce[] being dismissed, that motion is moot as well." In their appendix, Holmdel and Ackerson included a letter written to Judge McCarthy addressing Boyce's motion for sanctions and noted that they disagreed with Boyce's assertion that the granting of Boyce's reconsideration motion "concluded the litigation as to all issues, except Boyce's [t]hird[-p]arty complaint for indemnification for the expenses he incurred defending [plaintiffs'] claims against him while employed by Holmdel Cemetery." Holmdel and Ackerson cited Judge McCarthy's oral decision, referenced above. They also stated that "Boyce's attorney reached out to the [c]ourt to confirm the status of this matter with th[e] [c]ourt" and that, "[i]n an email to counsel, counsel for Boyce stated 'I received a telephone call from Judge McCarthy's chambers[.] [T]he [j]udge reviewed my letter and said the case was "Dismissed."'" A copy of this email was not included with Holmdel and Ackerson's submission. Based on the foregoing, the judge appears to have dismissed as moot Boyce's claim for indemnification, and we disagree with Boyce that the case needs to be remanded for disposition.

indemnitor's fault." Cent. Motor Parts Corp. v. E.I. duPont deNemours & Co., 251 N.J. Super. 5, 9 (App. Div. 1991). Because Boyce had to defend himself from plaintiffs' claims prior to their dismissal, we disagree with the judge that Boyce's indemnification claim was moot. However, we are convinced that dismissal was appropriate on other grounds.

The right to common-law indemnification in a tort context "rests upon a difference between the primary and secondary liability of two [parties,] each of whom is made responsible by the law to an injured party." Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960) (quoting Builders Supply Co. v. McCabe, 77 A.2d 368, 370 (Pa. 1951)). Common-law indemnification is "a right which [insures] to a [party] who, without active fault on his [or her] own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which [the party] is only secondarily liable." Ibid. (quoting Builders Supply Co., 77 A.2d at 370).

"Although a third-party tortfeasor cannot seek contribution from an employer, it may obtain indemnification where that course is specifically permitted by way of an express contract." Port Auth. of N.Y. & N.J. v. Honeywell Protective Servs., Honeywell, Inc., 222 N.J. Super. 11, 19 (App. Div. 1987). Here, Boyce does not proffer any evidence of an express indemnification

agreement between himself and Holmdel. He relies instead on the fact that Holmdel was his employer. Holmdel and Ackerson counter that no contractual or special relationship existed requiring them to indemnify Boyce, and that when Boyce appeared on "Kane in Your Corner," he was no longer employed by Holmdel.

In the absence of express contractual indemnification, we analyze Boyce's claim under a theory of implied indemnification. "The contours of the doctrine [of implied indemnification] are somewhat narrow . . . ." Id. at 20. "As a general rule, a third party may recover on a theory of implied indemnity from an employer only when a special legal relationship exists between the employer and the third party, and the liability of the third party is vicarious." Ibid. (quoting Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 188-89 (1986)).

> Perhaps the most common example of a special legal relationship that gives rise to an implied right of indemnification is the relationship of principal to agent. When an agent commits a tort in good faith reliance on the directions of his [or her] principal, the agent is entitled to indemnification from the principal for his [or her] liability to an injured third party.
>
> [Stephenson v. R.A. Jones & Co., 103 N.J. 194, 209 (1986) (Stein, J., dissenting).]

A-1164-22

Even assuming that a special relationship existed between Boyce and Holmdel at the time of Boyce's alleged conduct, nothing in the record shows that Boyce acted under Holmdel's direction. In fact, plaintiffs' complaint characterizes Boyce's conduct as harmful not only to plaintiffs, but to Holmdel as well. According to the complaint, "[t]he short-term goal of Boyce's campaign of deceit and economic sabotage was to inflict economic damage upon Memorial Properties and the Cemetery, driving away prospective purchasers by telling them the Cemetery and its sales company were untrustworthy and would cheat them in one manner or another," and "[t]he long-term objective of his campaign was to persuade the Cemetery to terminate Memorial Property's contract so that Boyce could take control of the cemetery." This alleged conduct can only be imputed to Boyce, not Holmdel. Thus, reliance on an implied indemnification theory fails.

"Costs incurred by a [party] in defense of its own active negligence . . . are not recoverable, but those costs incurred on defending claims on which the [party] is found only derivatively or vicariously liable are recoverable." Cent. Motor Parts Corp., 251 N.J. Super. at 11. Without an express indemnification agreement, Boyce cannot recover from Holmdel for his own negligence. See Mantilla v. NC Mall Assocs., 167 N.J. 262, 275 (2001) (holding that "absent

explicit contractual language to the contrary, an indemnitee who has defended against allegations of its own independent fault may not recover the costs of its defense from an indemnitor").

As such, we are satisfied that dismissal of Boyce's indemnification claim was appropriate, albeit for different reasons than those expressed by the judge. Hayes v. Delamotte, 231 N.J. 373, 387 (2018) ("A trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning.").[6]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[6] We acknowledge that the motion judges exhibited tremendous competence in wading through poorly drafted pleadings and submissions by counsel throughout the course of this case, including "pleadings [that were] difficult to untangle," making it "difficult to find clear distinctions in the arguments regarding each cause of action in the moving papers and opposition," which "made it extremely challenging for[] . . . the opposing counsel to understand and articulate, . . . as well as th[e c]ourt."

A-1164-22